**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INDEPENDENT STAVE COMPANY, Diversified Industries Division, Respondent.**

**No. 78–1146.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Jan. 23, 1979.

Rehearing and Rehearing En Banc Denied Feb. 13, 1979.

Peter Winkler, Atty., N. L. R. B., Washington, D. C. (argued), John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Marjorie S. Gofreed, Atty., Washington, D. C., on brief, for petitioner.

Donald W. Jones, Prewitt, Jones & Karchmer, Springfield, Mo., argued and on brief, for respondent.

J. F. Souders of Gruenberg, Souders & Levine, St. Louis, Mo., on brief of amicus curiae, Coopers' International Union, etc.

Before HEANEY and STEPHENSON, Circuit Judges, and HANSON,* Senior District Judge.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this Court for enforcement of its order against Independent Stave Company, Diversified Industries Division. The Board's decision and order are reported at 233 NLRB No. 179, 97 L.R.R.M. 1102 (1977).[1] The critical issue is whether Diversified violated § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), by insisting that Local Union No. 7, as a precondition to arbitrating certain grievances, sign an affidavit stating that its parent union, the Coopers International Union of North America, AFL–CIO, had not instructed, conferred, employed, paid or guaranteed payment or in any direct or indirect way entered into pursuit of grievances and further stating that all work and expense incurred in processing the grievances through arbitration was to be borne solely by Local No. 7.

In 1967, the International Union was certified by the Board as the collective bargaining representative of production and maintenance employees of Diversified's Lebanon, Missouri, plant. Thereafter, Diversified entered into three successive collective bargaining agreements with the International Union and Local No. 7. The latest agreement, effective from November 4, 1974, through November 3, 1977, contained a modified grievance and arbitration clause

which provided, "The processing of grievances in arbitration shall be solely handled by the local union."[2]

In 1975, Local No. 7 filed eight grievances with Diversified. The company refused to arbitrate them saying that there was nothing to arbitrate. Local No. 7 then filed an action in District Court to compel arbitration. Thereafter, the parties executed a settlement agreement under which five of the grievances were to be arbitrated.

An arbitration on the first of the five grievances was held in August, 1976. Back pay was awarded to three of the employees as a result of the arbiter's decision. Local No. 7 was represented in the arbitration proceeding by an attorney employed by the law firm that served as General Counsel for the International. Attorney's fees were paid from a strike and defense fund established by the Constitution of the International Union. One-third of the dues and initiation fees of all members are paid into this fund. The minimum payment is $3.25 per month. The fund is used for strike benefits, arbitration costs and legal fees.

Diversified refused to proceed to arbitration on the two additional grievances or to pay the back pay award for the three employees on the ground that the International had violated the collective bargaining agreement by assisting the local in the processing of the grievances through arbitration.

Late in 1976, two additional grievances were filed. Diversified responded by mail-

---

* WILLIAM C. HANSON, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

1. For an earlier unfair labor practice case involving the Independent Stave Company and the Coopers' International Union, *see Independent Stave Company v. N. L. R. B.*, 352 F.2d 553 (8th Cir. 1965), *cert. denied*, 384 U.S. 962, 86 S.Ct. 1588, 16 L.Ed.2d 674 (1966).

2. It can be argued that this particular clause was not a mandatory subject of collective bargaining because it is repugnant to the purposes of the Act and unenforceable as it significantly limits the right of the International Union, the certified bargaining agent, to represent its members in the settlement of grievances. *See*

*N. L. R. B. v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958); *N. L. R. B. v. Signal Manufacturing Company*, 351 F.2d 471 (1st Cir. 1965), *cert. denied*, 382 U.S. 985, 86 S.Ct. 562, 15 L.Ed.2d 474 (1966); *National Labor Relations Board v. Kentucky Util. Co.*, 182 F.2d 810 (6th Cir. 1950); *AMF Incorporated-Union Machinery Division and Machinists Lodge 1738, AFL–CIO*, 219 NLRB No. 109, 90 L.R.R.M. 1271 (1975); *Lufkin Telephone Exchange, Inc.*, 191 NLRB No. 151, 77 L.R.R.M. 1488 (1971). In view of the fact that we affirm the Board's construction of the clause, we need not reach the issue of repugnancy. *See Racine Die Casting Co.*, 192 NLRB No. 73, 77 L.R.R.M. 1819, n.6 (1971).

ing a letter to Local No. 7 in which it stated:

> To insure the arbitration is solely handled and financed by Local 7, I do not feel it is out of order to request those representing Local 7 and the officers of Local 7 to sign an affidavit stating the Coopers International Union has not instructed, conferred, employed, paid or guaranteed payment, or in any direct or indirect way entered into the pursuit of this grievance. Also, that all the work and expenses occurring from the grievance and arbitration is born [sic] solely by Local 7.

A copy of this letter was sent to the arbiter. He responded by proposing that he first consider whether the International Union and Local No. 7 had violated the section of the collective bargaining agreement with respect to handling of grievances and then to determine the merits of the grievance. The union agreed to this proposal but the company rejected it.

The International and the local then filed an unfair labor practice, charging that the company was violating § 8(a)(5) by conditioning its participation in the arbitration proceeding upon the submission of the affidavit described above. The Board found that the defense fund was separately maintained by the International Union for the use of the local unions involved and for the specific expenses enumerated above. It further found that when a local incurs an expense payable from the fund, the bill is sent to the International Union and checks drawn on the fund are signed by it. The Board concluded that the International was "not bearing the expense of legal or arbitration fees in the handling or processing of grievances." It held that "when [Diversified] demanded the assurances in an affidavit from Local 7 as a condition precedent to arbitration, it modified the contractual grievance procedure of the contract and effectively blocked Local 7 from utilizing the grievance procedure unless and until it waived its rights as a bargaining representative," and that the International "would be relinquishing its rights and obligations as a bargaining representative were it foreclosed as [Diversified] demanded." It fur-

ther held that "Local 7 was free to consult or to confer with the International on the advisability of filing a grievance or how best to process a grievance, despite the language of the contractual provision. * * * To insist as a condition precedent to processing grievances that Local 7 submit an affidavit that it is not doing what it is permitted to do under the contract and under the statute is a unilateral and significant change in the grievance procedure provisions of the contract." It finally held that "by insisting upon the affidavit from Local 7 * * * [Diversified] unilaterally created a condition to the future processing of grievances which effectively amounted to a unilateral modification of the contract in mid-term in violation of Sections 8(d) and 8(a)(5) of the Act."

The Board ordered Diversified to post appropriate notices, to withdraw its insistence that the representatives of Local No. 7 sign the affidavit previously referred to as a condition precedent to processing of grievances and that the International Union attest to the fact that Local No. 7 has received no assistance whatsoever in the handling or processing of grievances, to cease interfering with its employees in the exercise of their rights under § 7 of the Act and to bargain in good faith with the local and International Unions.

Section 8(a)(5) of the Act makes it an unfair labor practice for an employer to refuse to bargain collectively with the representative of his employees. An employer violates § 8(a)(5) of the Act when it makes a mid-term change in any provision of the collective bargaining agreement relating to a mandatory subject of bargaining. *Allied Chemical & Alkali Workers v. P. P. G. Co.*, 404 U.S. 157, 183–188, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *N. L. R. B. v. Huttig Sash & Door Co.*, 377 F.2d 964, 967 (8th Cir. 1967). A grievance-arbitration procedure is a term or condition of employment and a mandatory subject of bargaining within the meaning of § 8(a)(5). *Taft Broadcasting Co., WDAF AM–FM–TV v. N. L. R. B.*, 441 F.2d 1382 (8th Cir. 1971).

It follows that Diversified violated § 8(a)(1) and (5) of the Act if it made a unilateral mid-term change in the collective bargaining agreement. The Board's finding that it made such a change by refusing to arbitrate unless the disputed affidavit was signed is supported by substantial evidence on the record as a whole.

The clause is quite clear. It simply provides that grievances submitted to arbitration "shall be solely handled by the local union." It does not prohibit the local from being advised or counseled by the International Union with respect to handling grievances in arbitration. It does not prohibit the International Union from advising the local as to the merits of grievances, it does not specifically prohibit the local from employing counsel to assist it in preparing and submitting grievances to arbitration, and it does not specifically bar the International Union from contributing to the expense incurred in processing grievances through arbitration.

Diversified's principal argument is that the parties intended that the clause be interpreted to prohibit the International Union from paying the expenses of arbitration, and that it did pay such expenses with respect to the grievances in question. The Administrative Law Judge and the Board avoided this issue by holding that the payments were made from the defense fund and that the defense fund was not a fund of the International Union but was a fund held by the International Union for the benefit of the local unions and their members. This holding has substantial support in the record.

The defense fund is provided for in the Constitution of the International Union.[3] The Constitution provides in substance that each local is to pay approximately one-third

of the dues collected from each member to the defense fund and one-third to the International Union's general operating fund. Each local is permitted to retain the balance of the dues collected for its own purposes. Payments from the defense fund to the locals are made by the president of the International Union upon the approval of the executive board. The president of the International Union testified that it is the policy of the Board to approve for payment all bills submitted by local unions for legal fees and arbitration expenses. He further testified that the International Union had not made any contributions to the local union for the purpose of processing Diversified's grievances other than those made from the defense fund, and that the International Union had not otherwise participated in the handling and processing of the grievances for this local union since the 1974 agreement had been signed. The testimony of the president of the International Union was not contradicted.

If we were to adopt the position urged by Diversified, we would be required to hold that the International and local unions had waived the right of their members to have monies contributed to the defense fund used in arbitration proceedings. We are unwilling to so hold without clear and convincing evidence of such waiver. No such evidence is present here. Moreover, the clause requiring the local union to solely handle the processing of grievances submitted to arbitration must be strictly construed since it tends to limit the statutory right of the employees to be represented by the International Union, the certified bargaining agent. When so construed, it does not bar the financial assistance provided to the local from the defense fund.

**3.** Article XXIX of the Constitution provides as follows:

Section 1. Each Local Union shall pay through its Financial-Secretary-Treasurer monthly on all members in good standing to the International President, Secretary-Treasurer a sum of not less than one (1) hours pay plus twenty-five (25 cents) at the lowest rate found in the respective Contracts or a minimum of three dollars and a quarter

($3.25) per month per member, which ever is the greater. * * * Said funds shall be deposited in the Amalgamated Strike, Defense and Organizing Fund.

\* \* \* \* \*

Section 3. The above mentioned Fund shall be under the exclusive control of the General Executive Board and shall be appropriated for strikes, defense of the Local Unions and organizing.

We find no merit in Diversified's contention that a company's breach of an agreement to arbitrate is not a matter for the National Labor Relations Board but is for the courts. Here, the unions agreed to permit the arbiter to decide precisely what was meant by the disputed words and the employer refused. Moreover, it is clear that the Board has the power to interpret collective bargaining agreements pursuant to the enforcement of statutory rights. *N. L. R. B. v. C & C Plywood Corp.*, 385 U.S. 421, 424–430, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967); *N. L. R. B. v. Huttig Sash & Door Co., supra* at 968–970. Similarly, under § 10(a) of the Act, the Board may "proscribe conduct which is an unfair labor practice even though it is also a breach of contract remediable as such by arbitration and in the courts." *N. L. R. B. v. Strong*, 393 U.S. 357, 361, 89 S.Ct. 541, 544, 21 L.Ed.2d 546 (1969).

We do feel that the Board's order is broader than it should be. There is no substantial evidence in the record indicating that Diversified has refused to bargain in good faith on any issues other than those relating to the processing of grievances through arbitration.

We enforce the Board's order as written, with the exception of paragraph 2(a).[4] That section shall be deleted from the order and from the notice to the employees.

The Board's order is enforced as modified.

Costs will be taxed to Diversified.

---

4. Paragraph 2(a) of the order provides as follows:

> Respondent, Independent Stave Company, Diversified Industries Division, its officers, agents, successors and assigns, shall:
>
> \*　\*　\*　\*　\*　\*
>
> 2. Take the following affirmative action, which is deemed necessary to effectuate the policies of the Act.

(a) Bargain in good faith, upon request, with Coopers' International Union of North America, AFL–CIO and its Local Union No. 7, as the exclusive representative of the employees in the aforesaid appropriate unit, concerning wages, hours, and other terms or conditions of employment, and embody in a signed agreement any understanding reached.