INDEPENDENCE–NATIONAL EDUCATION ASSOCIATION, Independence–Transportation Employees Association, Independence–Educational Support Personnel, Randi Louise Mallett, and Ron Cochran, Appellants,

v.

INDEPENDENCE SCHOOL DISTRICT, Respondent.

No. SC 87980.

Supreme Court of Missouri, En Banc.

May 29, 2007.

Sally E. Baker, Loretta K. Haggard, St. Louis, for Appellants.

Duane A. Martin, Shellie L. Guin, Kansas City, Thomas A. Mickes, Chesterfield, for Respondent.

Veralene Campfield, Columbia, for amicus curiae Missouri State Teachers' Association.

Penney R. Rector, Jefferson City, for amicus curiae Missouri Council of School Administrators.

Melissa K. Randol, Kyle M. Farmer, Columbia, for amicus curiae Missouri School Board's Association and Missouri Municipal League.

Frederic O. Wickham, Brian P. Wood, Kansas City, for amicus curiae American Federation of Teachers-Missouri.

MICHAEL A. WOLFF, Chief Justice.

## I. Introduction

The Missouri Constitution's bill of rights contains the following guarantee: "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." Missouri Constitution article I, section 29.

This case raises two issues:

1. Does the "right to organize and to bargain collectively" apply to public employees as well as private-sector employees?

2. If the public employer, in this case the school district, negotiates an agreement with its employee groups, may the public employer unilaterally impose a new employment agreement that contradicts the terms of the agreements then in effect?

The answer to the first question, which follows the plain words of the constitution, is yes.

The answer to the second question—with the understanding that the law does not require the school district as public employer to reach agreements with its employee associations—is no.

Unquestionably, public employees are differently situated from private employees and are treated differently under the law. The law, for instance, forbids strikes by public employees. *St. Louis Teachers Ass'n. v. Board of Education,* 544 S.W.2d 573, 575 (Mo. banc 1976). There are two basic reasons for the no-strike laws. The first is that many public employees—especially police and firefighters—are deemed essential to the preservation of public safety, health, and order. The second is that the economic forces of the marketplace—that limit, at least in theory, the extent to which employers can meet employee groups' demands—do not constrain the public sector. In the public sector, meeting the demands of employee groups is thought to infringe on the constitutional prerogative of the public entity's legislative powers by forcing the entity to raise taxes or distribute public services in a manner inconsistent with the best judgment of the entity's governing board.

The trial court held that the Independence School District was not required to bargain collectively with its employees and was not bound by any agreements that it had entered with groups representing its employees.

The rights guaranteed by article I, section 29 apply to "employees." Under the express words of the constitution, this provision is not limited to private-sector employees. All employees, including those represented by the employee associations in this case, have the "right to bargain collectively." Although the employer is not required to reach an agreement with employees as to working conditions, once an employer has done so, it is bound by the terms of that agreement.

The judgment of the trial court is reversed, and the case is remanded.

## II. Facts and Procedural History

The facts are not in dispute. The case was tried on a stipulation of facts.

Three employee associations sued the Independence School District, a public school district governed by a board of education. The Independence–Transportation Employees Association represents the district's transportation employees. The Independence–Educational Support Personnel represents the district's custodial employees. These associations are certified as the exclusive bargaining representatives for their respective employees pursuant to Missouri's public sector labor law; section 105.500, *et seq.*[1] The Independence–National Education Association represents the district's teachers and paraprofessionals.

Before the events at issue in this litigation, it was customary for representatives of the transportation and custodial employee associations to meet and confer separately with representatives of the board about proposals relating to the salaries and working conditions of their represented employees. The results of these discussions were reduced to writing in the form of memoranda of understanding, in accordance with the public sector labor law. Each memorandum of understanding was approved by the board's authorized representatives.

Though teachers are not included in the public sector labor law, it was customary for the district to hold discussions with representatives of the Independence National Educational Association relating to teachers' working conditions, pursuant to a "discussion procedure" that was adopted by the board.

In April 2002, the board and the employee groups had in effect memoranda of understanding and, in the case of the teachers, a "discussion procedure" agreement that the board had previously approved.

The board, however, unilaterally adopted a new "Collaborative Team Policy" in April 2002 that changed the terms of employment of the employees represented by these associations. The district did not meet and confer with the employee associations or obtain their consent before imposing the "Collaborative Team Policy."

The new policy conflicted with the memoranda of understanding then in effect for both the transportation employees and the custodial workers. The memorandum of understanding for the transportation employees contained substantive provisions, including those relating to grievances, payroll deductions, discipline, and dismissal, that were rescinded by the board's unilateral adoption of the new policy. The adoption of the policy also resulted in the unilateral rescission of the discussion procedure governing the teachers and paraprofessionals represented by the Independence National Educational Association.

The school district acknowledges that its unilateral adoption of the new policy constituted a refusal to bargain collectively with these employee associations.

The employee associations filed this suit in March 2003 challenging the district's refusal to bargain with them and the district's rescission of agreements that already had been established.

In the previous appeal in this case, the trial court had granted the district's motion for summary judgment. The court of appeals reversed the judgment in part and remanded. *Independence–National Education Ass'n v. Independence School Dist.*, 162 S.W.3d 18 (Mo.App.2005). This Court denied transfer. *Id.* The case was then tried on a stipulated factual record, and the trial court entered judgment for the district. The trial court agreed that the district had refused to bargain collectively

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

with the unions and had unilaterally rescinded its agreement, but concluded that Missouri law allowed such actions.

The employee associations now appeal to this Court which, by order, treated this as an application for transfer prior to opinion by the court of appeals and sustained the application. This Court has jurisdiction. Mo. Const. art. V, section 10.

## III. The District's Refusal to Bargain Collectively

### A. Is legislative power being delegated?

Appellants' first claim is that the district violated article I, section 29 of Missouri's Constitution by refusing to bargain collectively with the representatives of the employee associations. There is no dispute that the district refused to bargain collectively with its employees.

Despite the plain language of the constitutional provision, which states that "employees shall have the right to bargain collectively," this Court held in *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539, 542 (1947), that article I, section 29 does not apply to public employees. If the guarantee applies to public employees, this Court said, the legislative powers of the public entity would be unconstitutionally delegated to nongovernmental entities through the collective bargaining process. *Id.*

*Clouse* recognizes that all employees have the right to join unions and to bring "their views and desires to any public officer or legislative body," but distinguishes this from the right to bargain collectively. *Id.* This distinction is based on the now largely defunct nondelegation doctrine, which holds that it is unconstitutional for the legislature to delegate its rule-making authority to another body. *Clouse* cites *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed.

1570 (1935), which has been abandoned in subsequent decisions. *Schechter Poultry* has been called "aberrational" because it is one of very few cases that were "departure[s] from a generous recognition of congressional power to delegate rulemaking authority[.]" *United States v. Frank*, 864 F.2d 992, 1010 (3rd Cir.1988). Since 1935, the United States Supreme Court has generally upheld delegations of congressional authority. *Id.; see, e.g., Lichter v. United States*, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948) (delegation of authority to determine excessive profits); *Federal Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944) (delegation to determine reasonable rates); *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) (delegation to regulate broadcast licensing).

Similarly, the nondelegation doctrine has been largely abandoned in Missouri. *See Menorah Medical Center v. Health and Educational Facilities Authority*, 584 S.W.2d 73, 83–84 (Mo. banc 1979) (recognizing modern tendency towards liberal interpretation of delegation authority); *Murray v. Mo. Highway and Transportation Commission*, 37 S.W.3d 228, 234 (Mo. banc 2001) (statute requiring the commission to submit disputes to arbitration panel is not an unconstitutional delegation). The nondelegation *dictum* in *Clouse* and public employee cases that follow *Clouse* has rightly been called an "anachronism." James E. Westbrook, "The Use of the Nondelegation Doctrine in Public Sector Labor Law: Lessons From Cases That Have Perpetuated an Anachronism," 30 *St. Louis Univ. L.J.* 331 (1986).

*Clouse* disapproves of including public employees in the "right to bargain collectively" because decisions relating to public employment are "legislative." 206 S.W.2d at 544–545. As applied to the municipal

employees in *Clouse*, "qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of lawmaking and cannot be the subject of bargaining or contract." *Id.* at 545. For this reason, *Clouse* found that article I, section 29 did not apply to public employees because "the right to bargain collectively" in the public sector "could amount to no more than giving expression to desires for the lawmaker's consideration and guidance." *Id.*

In 1965, the legislature passed the public sector labor law, which authorized most public employees "to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representatives of their own choosing...." Section 105.510. The public sector labor law excludes "all teachers of all Missouri schools." *Id.*[2] After the law went into effect, many public employees—including the custodial, transportation, and paraprofessional employees represented by the associations in this case—had a recognized right to bargain collectively, despite this Court's language in *Clouse* that public employment can never be the subject of bargaining or contract. To be consistent with article I, section 29, the statute's exclusion of teachers cannot be read to preclude teachers from bargaining collectively. Rather, the public sector labor law is read to provide procedures for the exercise of this right for those occupations included, but not to preclude omitted occupational groups from the exercise of the right to bargain collectively, because all employees have that right under article I, section 29. Instead of invalidating the public sector labor law to the extent that it excludes teachers, this Court's reading of the statute recognizes the role of the gen-

eral assembly, or in this case, the school district—in the absence of a statute covering teachers—to set the framework for these public employees to bargain collectively through representatives of their own choosing. In this regard, it is noteworthy that prior to this controversy, the district in effect recognized the teachers' right to bargain collectively through its "discussion procedure."

█ There is nothing in the law, as it has developed, that requires a public entity to agree to a proposal by its employee unions or organizations. In fact, this Court has repeatedly recognized that the public sector labor law allows employers to reject all employee proposals, as long as the employer has met and conferred with employee representatives. *State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35, 41 (Mo.1969); *State ex rel. O'Leary v. Missouri State Board of Mediation*, 509 S.W.2d 84, 88–89 (Mo. banc 1974); *Curators of the University of Missouri v. Public Service Employees Local No. 45*, 520 S.W.2d 54, 57 (Mo. banc 1975); *Larry Reichert, et al. v. The Board of Education of the City of St. Louis*, 217 S.W.3d 301 (Mo. banc 2007).

Under this interpretation, what legislative power or prerogative is being delegated? The answer today, of course, is none. If the public employer is free to reject any proposals of employee organizations, and thus to use its governing authority to prescribe wages and working conditions, none of the public entity's legislative or governing authority is being delegated. *Missey*, 441 S.W.2d at 41.

**B.   Applying the plain meaning of article I, section 29**

Both sides of this controversy cite the debates of the constitutional convention to

---

**2.**   Section 105.510 also excludes police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, and college and university teachers.

support their respective positions as to whether the constitutional convention delegates did or did not intend that public employees be included in article I, section 29.[3]

Section 29 is part of Missouri's current Constitution, which was the product of a constitutional convention in 1943 and 1944 and was adopted by the voters in 1945. While the debates of the convention are interesting, they neither add to nor subtract from the plain meaning of the constitution's words. Missouri's voters did not vote on the words used in the deliberations of the constitutional convention. The voters voted on the words in the Constitution, which says "employees shall have the right to organize and to bargain collectively . . . ."

■ "Employees" plainly means employees. There is no adjective; there are no words that limit "employees" to private sector employees. The meaning of section 29 is clear and there is, accordingly, no authority for this Court to read into the Constitution words that are not there. *Kearney Special Road Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. banc 1993).[4]

■ The doctrine of *stare decisis* promotes security in the law by encouraging adherence to previously decided cases. *Medicine Shoppe Int'l, Inc. v. Director of Revenue*, 156 S.W.3d 333, 334–35 (Mo. banc 2005). *Stare decisis*, however, "is not absolute, and the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Id.* at 335. This is such a case. *Clouse* contradicts the plain meaning of article I, section 29, which states simply that *employees*, without qualification, have the right to collective bargaining. Deviations from clear constitutional commands—although long-standing—do not promote respect for the rule of law. If the people want to change the language of the constitution, the means are available to do so. Mo. Const. art. III, sec. 50. This Court will not change the language the people have adopted. *Clouse* is overruled.

In addition to being consistent with the plain meaning of article I, section 29, this decision does not violate the nondelegation doctrine, to whatever extent the doctrine still exists. To allow employees to bargain collectively does not require the employer to agree to any terms with the represented groups. The employer is free to reject any and all proposals made by the employees. The employer is therefore not dele-

3. The employee associations stress that the constitutional convention delegates rejected two proposed amendments to the constitutional provision that would have specifically excluded public employees. The district argues that this Court in *Clouse*—decided just two years after the constitutional convention—determined that the framers' intent was not to include public employees. 206 S.W.2d at 543. The Court noted that the sponsor of section 29, who was a labor leader, stated that the provision would not require municipalities to bargain for salaries. *Id.*

4. It might be noted that Missouri's voters in 2002 rejected a proposed constitutional amendment that would have granted firefight-

ers the right to collective bargaining. The Court's task is, of course, to discern what the voters meant when they enacted article I, section 29, which is in the constitution, not what the voters might have intended in rejecting the 2002 amendment. One could say that the voters in 2002 now disapprove of granting public employees the right to bargain collectively, or perhaps just as plausibly, one could say that voters did not wish to grant the right to bargain collectively for one group of public employees and not others, or even that some voters might have thought the 2002 proposal superfluous. Needless to say, the intent of the 1945 voters cannot be ascertained by the actions of the 2002 voters.

gating or bargaining away any of its legislative power. *Missey,* 441 S.W.2d at 41.

The nondelegation doctrine is no impediment to applying the plain meaning of this explicit constitutional command.

## C. The Extent of the Constitutional Right

■ This Court in *Sumpter v. City of Moberly,* 645 S.W.2d 359 (Mo. banc 1982), held—following *Clouse*—that a city was free to disregard agreements made with employee associations or unions. The starting point was this Court's statement in *Clouse* that the "qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of lawmaking and *cannot be the subject of bargaining or contract.*" 206 S.W.2d at 545. (Emphasis added.) If that statement is true—that such matters cannot be the subject of bargaining—then the public sector labor law must be held to be invalid. The title of section 105.510 states "certain employees may join labor unions and *bargain collectively.*" [5] (Emphasis added). This law, however, was upheld in *Missey,* 441 S.W.2d at 41, which affirmed the viability of *Clouse* at the same time as it undercut it by ignoring its broad proscription of bargaining by employees in the public sector.

The public sector labor law upheld in *Missey* does not define what is meant by the right to "bargain collectively," [6] but describes the actions allowed under the statute: employees are granted the right to present proposals, through their representatives, to the employer; the employer is required to "meet, confer, and discuss" such proposals; and the results of this discussion are to be put in writing and "presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection." *Id.* at 40–41; section 105.520. The law makes clear that a public employer is not required to agree to anything. Section 105.520; *Missey,* 441 S.W.2d at 41; *O'Leary,* 509 S.W.2d at 88–89; *Curators,* 520 S.W.2d at 57.

The point of bargaining, of course, is to reach agreement. Public employers routinely engage in bargaining for employees. A school district that wishes to hire a superintendent may negotiate and reach an agreement that then becomes the subject of a contract. Sections 168.191; 168.201; 168.211. Nothing obligates the school district to agree to the superintendent's proposal—the school district can set the salary and other terms of employment and the superintendent can take them or leave them.

How does individual negotiation differ from bargaining that occurs with groups of employees? Conceptually it would appear to be the same process: proposals are made and either accepted or rejected.

---

5. The title of a statute is an editorial decision by the revisor of statutes rather than a legislative enactment and may not be considered in construing the statute. *State ex rel. Agard v. Riederer,* 448 S.W.2d 577, 581 (Mo. banc 1969). It is, however, an indication of a contemporaneous interpretation of the public sector labor law's provisions.

6. What, by common understanding, is "the right to bargain collectively?" The dictionary definition says "collective bargaining" is "negotiation for the settlement of the terms of a collective agreement between an employer or group of employers on one side and a union or number of unions on the other." Webster's Third New International Dictionary (1993). Similarly, Black's Law Dictionary (8th Ed.2004) says "collective bargaining" means "negotiations between an employer and the representatives of organized employees to determine the conditions of employment, such as wages, hours, discipline, and fringe benefits."

There hardly is any need, of course, to spell out that individuals have the right to negotiate and enter agreements as a simple matter of the right of contract. *See American Law Institute, Restatement of Contracts 2d § 12* (1981).

By contrast, it has been necessary to give legal recognition to the right of employees to "bargain collectively through representatives of their own choosing." *See, e.g.,* 29 U.S.C. section 157. Before the right to "bargain collectively" was statutorily authorized, such collective or concerted action would be considered unlawful. *Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. 229, 250–51, 38 S.Ct. 65, 62 L.Ed. 260 (1917).

Federal law, through the National Labor Relations Act, 29 U.S.C. section 151 *et seq,* regulates labor relations between employers and employees. That law, however, does not apply to employees of "any State or political subdivision thereof." 29 U.S.C. section 152(2). The federal statute protects the right of the employees it covers to engage in "collective bargaining." 29 U.S.C. section 157. This provision was part of the federal statute when article I, section 29 was drafted and adopted as part of Missouri's Constitution in 1945. The question, then, is why is article I, section 29 in the Missouri Constitution if private employees already had that right to bargain collectively under federal law? One reason is that Article I, section 29, which has no exclusions, is broader than the federal statute, which does have exclusions—most notably for employees of the state or its subdivisions. Another reason is that the Missouri Constitution protects the right to bargain collectively regardless of whether protections under federal law continue to exist.

◼ In any event, article I, section 29 applies to "employees," regardless of whether they are in the private or public sector, and nothing in this constitutional provision requires public employers to reach agreements with their employee associations.

## IV. Repudiation of Existing Agreements

◼ Having determined that the law does not require the public employer to reach an agreement with its employees, what remains is the issue of whether the public employer can repudiate agreements that it has chosen to enter into.

Despite the contractual nature of the agreements in this case, the district relies upon *Sumpter* for the proposition that the district—having accepted the proposals and entered into written agreements (contracts) with the employee groups regarding their represented employees—had the right unilaterally to rescind those agreements once it had agreed to them and put them into effect.

The city in *Sumpter* reached an agreement with a union representing firefighters as to the firefighters' working conditions. This agreement was made into a written memorandum of understanding. The city council enacted an ordinance adopting the terms of the memorandum as the "working conditions" for the two years covered by the document. A few months later, while the agreement was still in effect, the city imposed a new work schedule that conflicted with the terms of the memorandum. The union attempted to enjoin the city from proceeding with these changes. The union argued that the public sector labor law "authorizes a binding agreement between the public body and its employees when it authorizes adoption of the proposal by 'ordinance, resolution, bill or other form required for adoption.' " 645 S.W.2d at 362–63. This Court disagreed, noting that *Clouse* held that the

employer could not enter into the agreement in the first place without violating the constitutional mandate of separation of powers. *Id.* at 363. Even if the employer adopted the agreed-upon proposal, it was not a binding contract, but rather an ordinance, administrative rule, or regulation that could be changed by the public body at any time. *Id.* This Court in *Sumpter* held that the city was not bound by the agreement it had signed with the union and that the terms could be changed unilaterally by the city even during the effective period of the agreement.

There is no such principle—that is, that a contract's terms can be changed unilaterally—that applies to contracts between individual employees and governmental bodies. *See, e.g., Kunzie v. City of Olivette,* 184 S.W.3d 570, 574 (Mo. banc 2006) (recognizing that city employee could bring a contractual claim for wrongful discharge).

Labor contracts with groups of public employees have been treated as the only contracts—entered into within the authority of the governmental entity—that have been considered unenforceable. *Sump-*

*ter's* treatment of collective bargaining agreements is inconsistent with article I, section 29, and, accordingly, *Sumpter* is overruled.[7]

School districts execute binding contracts with school superintendents, creditors who hold the districts' bonded indebtedness, contractors that build and repair school buildings, textbook publishers, private cleaning services, and so forth.[8] These agreements are the subject of legislative action by the school district, but that does not mean the district can repudiate its agreements at will. No contractor or supplier could do business with an entity that repudiates its agreements.

■ In any public contract, there is the question of what duration a public entity is permitted to bind itself. Some of these limits are set by statute, and some that involve financial commitments may be limited by the length of the budget process.[9] School districts certainly are free to include clauses excusing contractual obligations, just as the teacher tenure act provides for placing teachers on leave of absence in times of financial distress or

---

**7.** *Glidewell v. Hughey,* 314 S.W.2d 749 (Mo. banc 1958), which applied *Clouse* to employees of a municipal utility, also should no longer be followed.

**8.** In *Peters v. Board of Education,* this Court held that an agreement between a school board and an association representing teachers that provided terms that the board could accept or reject was enforceable by the teachers' association once the district had entered into it. 506 S.W.2d 429 (Mo.1974). The dissent in *Sumpter* recognized that the result in *Peters* was contrary to the Court's decision in *Sumpter,* but the majority opinion does not cite, much less overrule, *Peters.* 645 S.W.2d at 366 (Seiler, J, dissenting).

**9.** Section 168.201 authorizes most school districts to employ a superintendent for a term not to exceed three years and to employ "such other servants and agents as it deems necessary" for terms not exceeding three years. As

to the budget process, *see* section 67.010 *et seq.; cf., Green v. Lebanon R–III School Dist.,* 13 S.W.3d 278, 289 (Mo. banc 2000) (Wolff, J., concurring); *see also Klotz v. Savannah R–III School Dist.,* 747 S.W.2d 708, 710 (Mo. App.1988) (last two years of three-year contract with superintendent void because contract did not set forth the essential term of salary for those two years). Westbrook suggests that agreements that have been bargained collectively be considered to run for a reasonable time, which is what courts often infer from contractual language. James E. Westbrook, "The Use of the Nondelegation Doctrine in Public Sector Labor Law: Lessons from Cases that Have Perpetuated an Anachronism," *30 St. Louis Univ. L.J.* 331, 381 (1986). In public contracts, however, courts should look first to applicable statutes and constitutional precepts.

failing enrollments.[10] Section 168.124, RSMo. Supp.2006. The parties did not address the question of how long the district would be obligated under its agreements, and that is an appropriate question for the circuit court to address on remand.

## V. Conclusion

Article I, section 29's guarantee that employees have "the right to bargain collectively" is clear and means what it says. Agreements that the school district made with employee groups are to be afforded the same legal respect as contracts made between the district and individuals, although public employees—unlike their private-sector counterparts—are not permitted to strike. As long as the duration and terms of such agreements comply with the limits provided by law for school districts to bind themselves, and are consistent with other statutes such as the teacher tenure act, the agreements are enforceable as any other contractual obligations undertaken by the district.

The judgment of the circuit court is reversed, and the case is remanded.

STITH, TEITELMAN, RUSSELL and WHITE, JJ., concur.

PRICE, J., concurs in part and dissents in part in separate opinion filed.

LIMBAUGH, J., concurs in opinion of PRICE, J.

WILLIAM RAY PRICE, JR., Judge, concurring in part and dissenting in part.

## I.

This case presents a complex factual and legal situation. The majority overrules two longstanding cases, *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (1947), and *Sumpter v. City of Moberly*, 645 S.W.2d 359 (Mo. banc 1982). *Clouse* should not be overruled, but *Sumpter* should. The status of either case, however, makes little difference to the outcome of this matter in light of other case and statutory law that otherwise controls.

## II.

The appellants in this case are three employee groups that sued the Independence School District. The Independence–Transportation Employees Association represents the district's transportation employees. The Independence–Educational Support Personnel represents the district's custodial employees. The Independence–National Education Association represents the district's teachers and paraprofessionals ("teachers").

Prior to 2002 and the events that led to this action, it was customary for representatives of the transportation and custodial employee associations to meet and confer separately with representatives of the school board about proposals relating to the salaries and working conditions of their represented employees in accordance with the public sector labor law, sections 105.500 to 105.530, RSMo 2000. Though teachers are not included in the public sector labor law, it was customary for the board to hold discussions with representatives of the teachers relating to the teachers' working conditions, pursuant to a "discussion procedure" that was adopted by the board as board policy.

---

10. For over a century, courts in Missouri have enforced school districts' contracts with teachers. *Wilson v. Board of Education of Lee's Summit*, 63 Mo. 137 (Mo.1876). Since the passage of the teachers' tenure act in 1969, courts have held that school districts may not unilaterally change the terms of teachers' contracts except as allowed in the limited circumstances set forth in section 168.110. *Dial v. Lathrop R–II School Dist.*, 871 S.W.2d 444, 450 (Mo. banc 1994). The teachers' tenure act does not preclude adherence to agreements with employee associations that are consistent with the act.

In April 2002 the board, unilaterally and without meeting with the employees, adopted a "Collaborative Team Policy" ("CTP") and rescinded the "discussion procedure." The CTP took away the ability of the representatives of the employee associations to meet and confer separately with representatives of the board about proposals relating to their salaries and working conditions. Instead, the CTP provides for the creation of one collaborative team comprised of representatives of all employee groups and joint, rather than separate, meet and confer discussions between representatives of all employee groups.

In addition, the board unilaterally changed the articles of an agreement in existence between the board and the transportation employees without discussions with, or the consent of, the transportation employees. The articles unilaterally changed by the board related to grievance procedure, payroll deductions, and dismissal and discipline procedure. In August 2002, the board unilaterally adopted a new grievance procedure, Board Policy 4850 and Board Regulation 4850, without discussions or the consent of the appellants.

The appellants argue that they are entitled to the right to bargain collectively under article I, section 29 of the Missouri Constitution and that *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (1947), was wrongly decided. They also argue that the Board was not permitted to adopt the CTP without first meeting and conferring with representatives of the employees. The appellants contend that they have the right to meet, confer, and discuss working conditions with the Board separately through the exclusive representative of their choosing, not by way of the joint meet and confer discussions under the existing CTP. Finally, the appellants argue that the board is not permitted to unilaterally rescind the agreements it reaches with its employees.

The issues presented in this case are: 1) do public employees enjoy the right to bargain collectively with public employers under article I, section 29; 2) what matters are required to be the subject of bargaining and/or discussions between a public employer and its employees; 3) who is the board required to accept proposals from and meet with during discussions; and 4) once a proposal produced by the discussions is adopted by the public employer through its governing body, is the employer bound to that agreement?

## III. Resolution of the Case Without Overruling *Clouse* and *Sumpter*

### A.

Article I, section 29 of the Missouri Constitution states: "Organized labor and collective bargaining—That employees shall have the right to organize and to bargain collectively through representatives of their own choosing." *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (1947), provided the initial interpretation of this section. *Clouse* held that article I, section 29 "can only be construed to apply to employees in private industry." *Id.* at 545. However, *Clouse* recognized the right of all citizens under the Missouri Constitution, including public employees, "to peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body." *Id.*

### B.

In 1965 the legislature enacted the public sector labor law, sections 105.500 to 105.530. Those sections outline the manner in which public employees are entitled to exercise the right to assemble recognized in *Clouse*. *See State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35 (Mo.1969).

In *Missey,* this Court held that "the general assembly must have had the intent to enact this legislation in accord with constitutional principles previously enunciated in *City of Springfield v. Clouse.*" *Id.* at 41. The Court declared:

> The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body, and therefore does no violence to *City of Springfield v. Clouse,* supra, 206 S.W.2d l.c. 543(4), 545–6(8, 9), because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched. The public employer is not required to agree but is required only to "meet, confer and discuss," a duty already enjoined upon such employer prior to the enactment of this legislation. *City of Springfield v. Clouse,* supra, l.c. 542–3(1–3). The act provides only a procedure for communication between the organization selected by public employees and their employer without requiring adoption of any agreement reached.

*Id.* The Court also distinguished the rights and limitations outlined in sections 105.500 to 105.530 from collective bargaining rights allowed to private employees under the constitution:

> [Sections 105.500 to 105.530] do not purport to give to public employees the right of collective bargaining guaranteed by Section 29, Article I, of the 1945 Constitution to employees in private industry and in the sense that term is usually known with its attendant connotation of unfair labor practice for refusal by the employer to execute and adopt the agreement produced by bargaining, and the use of strike as a bargaining device constitutionally protected to private employees but expressly denied by Section 105.530 to public employees.

*Id.* (internal citations omitted). Sections 105.500 to 105.530 have provided public employees with the alternative to collective bargaining that has been utilized for over 40 years. Although teachers are expressly excluded from those sections, they too enjoy the right to organize and discuss employment conditions with the public body through a representative of their choosing. *See Peters v. Bd. of Educ. of the Reorganized Sch. Dist. No. 5 of St. Charles County,* 506 S.W.2d 429, 432 (Mo.1974).

### C.

The public sector labor law sets out the perimeters in which the discussions between public employees and the governing body must take place.

Section 105.510 provides, in relevant part:

> Employees, except police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, all teachers of all Missouri schools, colleges and universities, of any public body shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing.

Section 105.520 provides, in relevant part:

> Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in

the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection.

The statutes guarantee the right of public employees, through their *exclusive* bargaining representative, to present proposals regarding salary and working conditions to a governing body. It also requires the governing body to meet, confer and discuss the proposals with the labor organization that is the *exclusive* bargaining representative of the employees. Again, teachers are afforded the same rights under *Clouse* and *Peters*. *See Clouse,* 206 S.W.2d at 542; *Peters,* 506 S.W.2d at 432.

## D.

It is important to note that the right to meet, confer and discuss clearly applies only to "salaries and other conditions of employment." Sec. 105.520. In the instant case, Missouri law is clear that the board retains the exclusive right to manage the district's operations and make all decisions regarding the manner in which the operations of the district are conducted. Section 171.011 gives school boards the power to make "all needful rules and regulations for the organization, grading and government in the school district." The statute vests the school districts with "broad powers and discretion in the management of school affairs." *School Dist. of Kansas City v. Clymer,* 554 S.W.2d 483, 486 (Mo.App.1977). Accordingly, the board is free to unilaterally adopt policies that do not relate to salary or working conditions, such as policies that establish the details of meet and confer procedures. However, the power of the board to manage school affairs through its policies is subject "to the guidelines of the statute[s] and to due process of law considerations," *Clymer,* 554 S.W.2d at 486, such as the meet and confer procedures set out in

sections 105.500 to 105.520. Although the details of the discussion procedures may be established in the policies of the employer, those procedures must comply with sections 105.500 to 105.530.

## E.

*Sumpter v. City of Moberly,* 645 S.W.2d 359 (Mo. banc 1982), acknowledged that a governing body may adopt the proposal of an employee group by way of ordinance, resolution or other appropriate form, depending on the nature of the public body. *Id.* at 363. It stated that "the result will be an administrative rule, an ordinance, a resolution, or something else ... but it will not be a binding collective bargaining contract." *Id.* Because any agreement made with employees was merely an ordinance or resolution, *Sumpter* held that governing bodies are free to disregard the agreement so long as the agreement is rescinded by appropriate action. *Id.*

## F.

Assuming that neither *Clouse* nor *Sumpter* is overruled, the appellants are nonetheless entitled to relief on most, but not all, of their claims.

### i.

Although *Clouse* would prevent the Court from ordering the board to bargain collectively with its employees pursuant to article I, section 29, under *Missey, Peters* and the public sector labor law the appellants are entitled to meet and confer with the Board regarding salary and other conditions of their employment. The Board was prohibited from adopting a grievance procedure without first meeting and conferring with the representatives of the employee groups, when requested, and, therefore, the unilaterally adopted grievance procedures are invalid. Grievance procedures are clearly a condition of employ-

ment. *NLRB v. Indep. Stave Co.*, 591 F.2d 443, 446 (8th Cir.1979); *see also Schaffer v. Bd. of Educ. of City of St. Louis*, 869 S.W.2d 163, 166 (Mo.App.1993) (federal authority is persuasive in the interpretation of the phrase, "other conditions of employment"). Further, the transportation employees are entitled to relief on their claim that the board improperly adopted policies regarding payroll deductions and dismissal and discipline without first discussing those changes with the representatives of the employees. Those subjects plainly deal with salary and conditions of employment and the provisions adopted unilaterally by the board in violation of the law are invalid.

### ii.

However, the board was not required to meet and confer with the appellants prior to adopting its policy on discussion procedure. Section 171.011 gives the board broad powers in managing the operations of the school. In the parties' joint stipulation of facts, the parties agree that the communication procedure rescinded by the board when it adopted the CTP was at all times contained in a board policy, not a contract or any other type agreement. There was no agreement between the board and the appellants that provided the appellants with any greater rights relative to the modification of that policy. Because the details of exactly how the parties will structure meetings to discuss working conditions is not itself a working condition, the board is free to adopt that policy unilaterally.

### iii.

As to the third issue, who the board is required to accept proposals from and meet with during discussions, appellants would be entitled to relief. Although the board was free to unilaterally adopt policies that did not relate to salary or working conditions, it was obligated by law to meet and confer with the *exclusive* bargaining representative of its employee groups. The meet and confer procedure adopted by the board in its CTP violates section 105.520 as well as the rights of the teachers recognized in *Clouse* and *Peters*. *See Clouse*, 206 S.W.2d at 542; *Peters*, 506 S.W.2d at 432.

Requiring the representatives of the Independence–Transportation Employees Association and the Independence–Educational Support Personnel to join a collaborative team before presenting their proposals did not adequately guarantee each respective group's "right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment *through the representative of their own choosing.*" Sec. 105.510 (emphasis added); *see also Independence–Nat'l Educ. Assoc. v. Independence Sch. Dist.*, 162 S.W.3d 18, 23 (Mo.App.2005). The CTP did not guarantee that the board would meet and confer "with the labor organization which is the *exclusive bargaining representative* of its employees." Sec. 105.520; *see also Independence–Nat'l Educ. Assoc.*, 162 S.W.3d at 23. Likewise, requiring the teachers to join a collaborative group did not adequately guarantee the teachers the right to speak freely and to present their views and desires either individually or through a representative of their choosing. *See Clouse*, 206 S.W.2d at 542; *Peters*, 506 S.W.2d at 432.

Under the case law and the public sector law, the CTP mandating collaborative team proposals is improper. The board must enact a new policy regarding the meet and confer procedure in accordance with the law, although it is not required to meet and confer with the appellants prior to doing so.

#### iv.

Finally, once a proposal produced by the meet and confer procedure is adopted by the board, the question is whether the board is bound to that agreement. If *Sumpter* is not overruled the appellants would not be entitled to relief on that issue. Under *Sumpter*, the board was free to unilaterally rescind any agreement it adopted so long as the agreement was rescinded by appropriate action. In this case, the board voted to rescind the agreements and, therefore, its action was proper under *Sumpter*.

### IV. Should *Clouse* be Overruled and Does it Make a Difference

#### A. Should *Clouse* be Overruled

Article I, section 29 does not expressly differentiate between public and private employees. As noted by the majority, when read in isolation, art. I, sec. 29 might appear to apply to public employees. But the section must be read in historical context with the understanding of collective bargaining in relation to public employees that existed at the time of its adoption in 1945.

The sponsors of art. I, sec. 29 recognized that wages and hours of public employees must be established by statute or ordinance and cannot be the subject of bargaining. The Honorable R.T. Wood, president of the State Federation of Labor and sponsor of section 29 at the convention stated: "I don't believe there is anyone in the organization that would insist upon having a collective bargaining agreement with a municipality setting forth wages, hours, and working conditions." *Clouse*, 206 S.W.2d at 543. The idea that collective bargaining was unacceptable in the public sector was also illustrated in a letter by Franklin D. Roosevelt, read at the convention:

All Government employees should realize that the process of collective bargaining, as usually understood, cannot be transplanted into the public service. It has its distinct and insurmountable limitations when applied to public personnel management. The very nature and purposes of Government make it impossible for administrative officials to represent fully or to bind the employer in mutual discussions with Government employee organizations. The employer is the whole people, who speak by means of laws enacted by their representatives in Congress. Accordingly, administrative officials and employees alike are governed and guided, and in many instances restricted, by laws which establish policies, procedures, or rules in personnel matters.

*Id.*

The decision in *Clouse*, that public employees do not enjoy the right to collective bargaining under the constitution, was handed down only two years following the convention. There is no doubt the Court then knew the intent of the framers and the mood of the 1945 electorate better than the Court does now. Essentially it determined that the term "collective bargaining" simply had no relation, by definition, to public employment. The holding has been relied upon as the correct interpretation of that section in Missouri for 60 years. *See, e.g., Curators of Univ. of Mo. v. Pub. Serv. Employees Local No. 45, Columbia*, 520 S.W.2d 54, 56 (Mo. banc 1975); *Missey*, 441 S.W.2d at 41; *State ex rel. O'Leary v. Mo. State Bd. of Mediation*, 509 S.W.2d 84, 87 (Mo. banc 1974). I would not overrule *Clouse*.

#### B. Does it Make a Difference

##### i. Law

While the majority spends great effort in overruling *Clouse* and in giving "all

employees, including those represented by the employee associations in this case ... the 'right to bargain collectively,'" it does not outline what differences from existing law would result by doing so. *Missey* and the public sector labor law have already marginalized *Clouse* by allowing "meet and confer rights" and giving public employees the right to "form and join labor organizations and to present proposals to any public body ... through the representative of their own choosing." Sec. 105.510.

The majority does not expressly define the right to "collective bargaining" in the public sector as opposed to the procedure already in place. The majority limits the right of the public employees to bargain collectively by expressly acknowledging that "nothing in this constitutional provision requires public employers to reach agreements with their employee associations" and stating that "the employer is not required to reach an agreement with employees as to working conditions." As for the right to strike, the majority further limits traditional ideas of collective bargaining by stating that the law "forbids strikes by public employees" and "public employees—unlike their private-sector counterparts—are not permitted to strike." The majority does not appear to have given public employees anything more than the rights public employees already enjoy to meet and confer and to choose their own representative.

### ii. Applied to Facts

Whether or not *Clouse* is overruled, the rights of the appellants are the same and, therefore, the relief they would be entitled to is the same. Under either approach, the appellants are entitled to relief on their claim that the board wrongfully refused to meet and confer with them prior to adopting any grievance procedures, which is a working condition. In addition,

the transportation employees are entitled to relief on their claim that the Board wrongfully refused to meet and confer with them prior to adopting policies governing payroll deductions and dismissal and discipline procedure. The board would be required to accept proposals and meet and confer with the employee representatives, when requested, prior to adopting policies relating to salaries, grievance procedures and other working conditions in the future, although it is not required to agree to anything. Finally, the CTP adopted by the board is invalid and the appellants would be entitled to meet with the board through their exclusive representative, rather than through a "collaborative team." However, the board would not be required to meet and confer with the appellants prior to adopting its policy on the further details of the discussion procedure. Sec. 171.011.

### V. Should *Sumpter* be Overruled

I agree with the majority that *Sumpter* should be overruled. Without going into detail, otherwise fully set out by the majority in its opinion and by Judge Seiler in his dissent to *Sumpter*, suffice it to say that while a governmental entity may not be forced to enter into a labor agreement, once it does so, it should be bound accordingly.

The complication in this regard, however, is the long recognized prohibition of one legislative body from binding a subsequent legislative body. *See Clouse*, 206 S.W.2d at 545; *State v. Hamey*, 168 Mo. 167, 67 S.W. 620, 624 (1902); *Watson Seminary v. Pike County Court*, 149 Mo. 57, 50 S.W. 880, 883 (1899). This is a variation on the separation of powers doctrine from one branch of government to another (legislative, executive, judicial), to one governmental body in time to the following governmental body in time. That is, the

succeeding governmental body must be allowed the full power to represent its constituents, regardless of the actions of any previous governmental body. This has been referred to in our precedent as follows:

> [I]n so far as one legislature could bind a subsequent one by its enactments, it could in the same degree reduce the legislative power of its successors; and the process might be repeated until, one by one, the subjects of legislation would be excluded altogether from their control, and the constitutional provision that the legislative power shall be vested in two houses would be, to a greater or less degree, rendered ineffectual. 'Acts of parliament,' says Blackstone, 'derogatory from the power of subsequent parliaments, bind not.'

*Hamey*, 67 S.W. at 624.

> [I]t is also indisputable that, as the general law of 1845 was only a legislative enactment, it could not bind subsequent legislatures, and prevent their granting charters.

*Watson Seminary*, 50 S.W. at 883.

This doctrine is easy to understand and apply to the legislature where general assemblies are expressly designated by number from election to election. Other governmental entities, such as school boards, are not so easy to differentiate from term to term. By focusing on *Sumpter*, the parties have not developed a legal record nor elevated themselves to a full briefing of the issue necessary for the Court to adequately resolve it.

It is enough here to say that even if *Sumpter* is overruled and a school board may be bound to its own agreements, such agreements may be rescinded by a subsequent school board and the only difference in result from overruling *Sumpter* is the extent of time that may be found to exist between one school board and its successor.

The appellants are entitled to relief on their claim that any given Board may not unilaterally change agreements it votes to adopt. However, any subsequent Board cannot be bound by a previous board's vote.

## VI. Conclusion

The majority states that *stare decisis* "is not absolute, and the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." However, a comparison of the outcome of this case under the majority opinion with the outcome under *Missey* and the existing public sector labor law, sections 105.500 to 105.530 *appears* to be insignificant.

"A decision of this court should not be lightly overruled, particularly where, as here, the opinion has remained unchanged for many years." *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 546 (Mo. banc 1963). Although *Clouse* has been substantially undercut by *Missey* and the public sector labor law, the "meet and confer" procedure is well established, predictable and functions acceptably both generally and in relation to the present controversy. It seems less harm would result from leaving this longstanding procedure in place than from giving public employees a new constitutional right to "collective bargaining" that the majority does not define, describes in terms similar to "meet and confer," and the application of which no one can predict.