In the Matter of SYRACUSE HANCOCK PROFESSIONAL FIREFIGHTERS ASSOCIATION, LOCAL 1888, IAFF, AFL-CIO, Petitioner, v HAROLD R. NEWMAN et al., Constituting the Public Employment Relations Board of the State of New York, Respondents, and CITY OF SYRACUSE, Intervenor-Respondent.

Third Department, October 10, 1985

### APPEARANCES OF COUNSEL

*Lombardi, Reinhard, Walsh & Harrison, P. C.* (*Richard P. Walsh, Jr.,* and *Michael T. McGarry* of counsel; *Thomas J. Jordan* on the brief), for petitioner.

*Martin L. Barr* (*Anthony Cagliostro* of counsel), for respondents.

*Bond, Schoeneck & King* (*John Gaal* and *Stephen J. Vollmer* of counsel), for intervenor-respondent.

### OPINION OF THE COURT

LEVINE, J.

Hancock Airport is a municipal airport owned by the City of Syracuse (the City) and operated by the City's Department of Aviation. Until 1969, aircraft crash rescue as well as general firefighting functions at the airport were the responsibility of the City's fire department. That year, however, pursuant to

authority granted by amendment to the City charter, a separate crash rescue and firefighting force for the airport was created under the supervision and control of the Department of Aviation. New civil service positions were created for this unit, which were then staffed by newly appointed personnel. In 1983, the members of the airport crash rescue unit, represented by petitioner, reached an impasse in collective bargaining with the City. Petitioner then requested of the City's public employment relations board that compulsory interest arbitration be instituted, pursuant to Civil Service Law § 209 (4). That section provides procedures for mandatory binding interest arbitration upon impasse in the case of "officers or members of any organized fire department, police force or police department of any county, city, except the city of New York, town, village or fire or police district". The City labor relations agency rejected the request on the ground that airport crash rescue workers were not members of an organized fire department and, therefore, section 209 (4) did not apply. A petition was then brought before the State Public Employment Relations Board (PERB) to overturn that decision as being at variance with the provisions and procedures of the Taylor Law (Civil Service Law art 14). When PERB likewise determined that the Hancock Airport crash rescue workers were not members of an organized fire department, petitioner initiated the instant CPLR article 78 proceeding.

We confirm. There is substantial evidence in the record to support PERB's finding, in effect, that the crash rescue unit's duties at the airport are both narrower and broader than those commonly performed by municipal fire fighters. The City's fire department retains primary responsibility for the prevention and control of fires at the airport except for those involving aircraft. In addition to their substantial firefighting role in connection with aircraft fires, the crash rescue workers perform many important functions in preventing or responding to a variety of other kinds of airport disasters.

Nonetheless, petitioner contends that since the focal point of the airport rescue unit's duties are functionally, as well as under the terms of the City charter, of a firefighting nature, Civil Service Law § 209 (4) should apply. In essence, petitioner asserts that any discrete unit of municipal employees whose primary function is to prevent and combat fires literally falls within the qualifying statutory phrase of being an "organized fire department", and hence, its members are to be afforded the right to enforce binding interest arbitration under the Taylor Law. From our reading of section 209 (4), however, we find the meaning of

the key phrase not so free from doubt as petitioner's position would imply. Petitioner's interpretation leaves the term "organized" largely superfluous, since any functioning subdivision of government is, by necessary implication, organized. A pertinent definition of "department" is "a *major* administrative division of a government" (Webster's New Collegiate Dictionary 302 [1980]; emphasis supplied). This suggests a municipal unit more general in scope and importance than the rather specialized airport rescue force under consideration here. At the least, the statutory phrase is as equally subject to such a connotation as it is to the expansive, functional meaning ascribed to it by petitioner. Moreover, as PERB's decision points out, the identical operative phrase in other legislation (Retirement and Social Security Law § 302 [11]) has been administratively construed to exclude members of an airport crash rescue squad.

Nor can it be said that PERB's exclusion of the Hancock crash rescue unit is contrary to the clear statutory purpose of section 209 (4) to impose binding arbitration over terms of employment for members of municipal police and fire departments. It has been observed that "compulsory arbitration of interest disputes in the public sector is inimical to both the collective bargaining process and the normal political process" (Barr, *The Public Arbitration Panel as an Administrative Agency: Can Compulsory Interest Arbitration be an Acceptable Dispute Resolution Method in the Public Sector?*, 39 Alb L Rev 377, 383). Section 209 (4) was enacted to respond to the special need to lessen the likelihood of work stoppages in the sensitive areas of public safety in which municipal police and fire departments function (*City of Amsterdam v Helsby,* 37 NY2d 19, 29 [Fuchsberg, J., concurring]). PERB was not acting inconsistently with these considerations in restricting application of section 209 (4) to fire and police departments organized as such and performing these general public safety functions in the subject municipality (*see, Matter of Erie County Sheriff [Local 2060, Council 66],* 7 PERB ¶ 3057; *Matter of County of Rockland [Rockland County Sheriff's Patrol Assn. — Rockland County Sheriff's Deputies Assn.],* 11 PERB ¶ 3050, *confirmed sub nom. Rockland County Sheriff's Patrol Assn. v New York State Public Employment Relations Bd.,* 67 AD2d 1109).

In short, this proceeding is yet another instance in which resolution necessarily involves questions of administrative policy and expertise and, accordingly, this court is obliged to defer to PERB's interpretation of the statute which that agency is charged with implementing (*Matter of Incorporated Vil. of Lynbrook v New York State Public Employment Relations Bd.,* 48

NY2d 398, 404). Since PERB's construction of section 209 (4) is not unreasonable, its determination should be confirmed.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, without costs.