Paul **MARGIOTTA**, Court Officers Benevolent Association of Nassau County, Plaintiffs,

v.

The Honorable Judith S. **KAYE**, as Chief Judge of the New York State Unified Court System, and The Honorable Jonathan Lippman, as Chief Administrative Judge of the New York State Unified Court System, Defendants.

No. 02 CV 5059(ADS)(ARL).

United States District Court, E.D. New York.

Sept. 18, 2003.

William D. Wexler, Esq., North Babylon, NY, for Plaintiffs.

Eliot Spitzer, New York Attorney General by Ralph Pernick, Assistant Attorney General, Mineola, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

### I. BACKGROUND

The following facts are taken from the complaint, the documents incorporated therein by reference, and matters of which judicial notice may be taken. *See Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (holding that in deciding a motion to dismiss the complaint, a Court may consider, among other things, facts stated on the face of the complaint, documents incorporated in the complaint by reference, and matters of which judicial notice may be taken); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (same).

## A. Statutory Framework

In 1967, New York enacted the Public Employees' Fair Employment Act, commonly referred to as the Taylor Law, "to promote harmonious and cooperative relationships between the government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government." N.Y. Civil Service Law § 200. Under the Taylor Law, public employees are barred from engaging in strikes. *Id.* §§ 200, 210. To ensure the uninterrupted operation of government, the Taylor Law grants public employees the right to unionize in the appropriate bargaining unit and the right to negotiate with their public employer, *id.* §§ 203, 204; and requires state and local governments to recognize, negotiate with and enter into written agreements with public employee organizations, *id.* § 204. Collective negotiation is an executive function carried out by the employer's chief executive officer.

In order to implement and interpret the statute, resolve negotiating conflicts between public employers and unions, and conduct research on civil service industrial relations, the Taylor Law created the Public Employment Relations Board ("PERB"). *Id.* § 205. PERB is independent of any governmental department. *Id.* § 205.6. PERB has authority over disputes occurring during the organizing and negotiating process. Upon the request of either party or upon PERB's own initiative, PERB can be involved in any phase of the negotiation process. *Id.* § 209.

In the event the parties reach an impasse in collective negotiations, N.Y. Civil Service Law Section 209 provides a number of different statutory impasse procedures, which vary based on the occupation of the parties. The first step of the impasse procedure for all covered employees is mediation. *Id.* §§ 209.3(a), 209.4(a).

PERB appoints a mediator to assist the parties in reaching a voluntary resolution of their dispute. *Id.* With the exception of employees who are eligible for compulsory interest arbitration, if the dispute is still not settled, impasses involving all public employees proceed next to a fact-finding board which is appointed by PERB to make findings and recommendations for resolution of the dispute. *Id.* § 209.3(b)-(d). In the alternative, the parties together may voluntarily submit to arbitration. *Id.* § 209.3(d)(ii). If the parties do not consent to arbitration and the matter is still unresolved, the final step of the statutory impasse procedure is a hearing before the legislative body of the employee's public employer. *Id.* § 209.3(e). If both parties do not accept the factfinding report, the legislative body, or a committee thereof, holds a public hearing where the parties must explain their positions regarding the impasse. *Id.* § 209.3(e). Thereafter, the legislative body settles the impasse taking into account the public interest and the interest of the public employees. *Id.* § 209.3(e).

In contrast, impasses which are not resolved by mediation, involving police officers, firefighters, and other miscellaneous public safety employees are referred by PERB to a neutral arbitration panel for compulsory arbitration. *Id.* § 209.4. The public arbitration panel then holds hearings on all matters related to the dispute and makes a determination of the matters in dispute which is final and binding. *Id.* § 209.4. Likewise, transit authority and metropolitan transportation authority employees are also subject to compulsory arbitration. *Id.* §§ 209.4(c), 209.5.

## B. The Plaintiffs' Complaint

Commenced on September 19, 2002, this action is related to *Margiotta, et al., v. Kaye, et al.,* CV 02–1585, which was dis-

missed on or about August 15, 2002 without prejudice and with leave to re-file. Plaintiff Paul Margiotta (a "plaintiff") is employed by the New York State Unified Court System ("UCS") as a Senior Court Officer in the County Court of Nassau County, New York, and is the duly elected President of the Court Officers Benevolent Associations of Nassau County ("CO-BANC" or a "plaintiff"). COBANC is the recognized collective bargaining representative for approximately nine hundred UCS employees in Nassau County, New York. Members of COBANC include court security officers, court clerks, office clericals, court attorneys, court reporters, interpreters, typists and secretaries.

As Chief Judge of the New York Court of Appeals, the Honorable Judith S. Kaye is also the Chief Judge of the New York State UCS which, as the independent judicial branch of the government of the State of New York, employs all the members of COBANC. The Honorable Jonathan Lippman is the duly appointed Chief Administrative Judge of the UCS.

According to the plaintiffs, the impasse procedures applicable to COBANC give the UCS bargaining advantage over the union. Unlike police officers, firefighters, and transit workers, members of CO-BANC are not entitled to compulsory arbitration. The plaintiffs contend that, in prior negotiations, the UCS has refused to consent to arbitration and the legislature has failed to conduct hearings or take any other action to resolve any impasse between the UCS and COBANC. According to the plaintiffs, because COBANC has been "coerced" to accept in the past "unsatisfactory labor agreements," the UCS have violated their right to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983. The plaintiffs claim that there is no rational and legitimate governmental purpose underlying the failure of the Taylor Law to accord COBANC and its membership the same compulsory binding arbitration rights granted to other public employees. In addition, the plaintiffs claim that, by utilizing the procedures set forth in the Taylor Law to deny CO-BANC a "meaningful opportunity to be heard," the defendants have deprived them of their Fourteenth Amendment procedural due process rights.

The complaint states that the current labor agreement between the UCS and COBANC is scheduled to expire on March 31, 2003. The plaintiffs seek relief to compel the UCS to submit to binding arbitration with COBANC under the Taylor Law "should the forthcoming collective bargaining negotiations reach an impasse."

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir. 2001); *Antares Aircraft, L.P. v. Fed. Rep. of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir. 1976). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. *See Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in the affidavits may not be considered.

*See Kamen v. AT & T,* 791 F.2d 1006, 1011 (2d Cir.1986).

### 2. Rule 12(b)(6)

█ In deciding a motion to dismiss under Rule 12(b)(6), a district court must " 'accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.' " *Courtenay Communs. Corp. v. Hall,* 334 F.3d 210, 213 (2d Cir.2003) (quoting *Desiderio v. National Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999)). A complaint should not be dismissed "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotations and citations omitted). "Because the complaint must allege facts that confer a cognizable right of action, 'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *DeMuria v. Hawkes,* 328 F.3d 704, 706 (2d Cir.2003) (quoting *York v. Ass'n of the Bar of the City of New York,* 286 F.3d 122, 125 (2d Cir.2002)).

### B. Ripeness of the Constitutional Claims

The defendants contend that the plaintiffs claims are not ripe for adjudication on the ground that this action was commenced more than six months before the collective bargaining agreement was to expire on March 31, 2003. The defendants further assert that the plaintiffs fail to allege that they are currently engaged in negotiations with respect to the subsequent bargaining agreement or that they are engaged in negotiations but have reached an impasse.

█ The ripeness doctrine prevents the courts from premature adjudication over abstract disagreements. *New York Public Interest Research Group v. Whitman,* 321 F.3d 316, 326 (2d Cir.2003) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning,* 282 F.3d 83, 90 (2d Cir.2002)). "When the events alleged in a plaintiff's cause of action have not yet occurred, a federal court is precluded from exercising subject matter jurisdiction because a real case or controversy does not exist for purposes of Article III." *Jungels v. State of New York,* 50 Fed.Appx. 43, 44, 2002 WL 31478981 (2d Cir.2002) (citations and internal quotations omitted). Thus, "[r]ipeness is a constitutional prerequisite to the exercise of jurisdiction" by the Court. *Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 225 (2d Cir.1998).

█ In determining whether a claim is ripe for review, the Court considers (1) the fitness of the issues for adjudication, and (2) the hardship to the parties if judicial review is withheld. *Id.* In considering whether an issue is fit for review, courts examine, among other things, whether the action or inaction challenged is "final" and whether the issues present a "purely legal question". *United States v. Quinones,* 313 F.3d 49, 59 (2d Cir.2002) (determining that a challenge to the facial constitutionality of a criminal statute presented a "purely legal question" and was therefore ripe for judicial review); *Nutritional Health Alliance v. Shalala,* 144 F.3d at 227 (stating that a claim is ripe for review because "[i]t involves a purely legal question that is eminently fit for review.").

█ Here, the plaintiffs contend that their complaint satisfies the jurisdictional requirements because it presents a purely legal question. Furthermore, in arguing that they will suffer hardship if the Court withholds review, the plaintiffs assert that this Court must take all of the allegations in their complaint as true and "draw all

inferences in favor of the plaintiffs." They point out that their complaint alleges that in prior negotiations the "Legislature [has failed] to conduct hearings or take any other action to resolve any impasse between UCS and COBANC," and consequently, COBANC has been "coerced" to accept "unsatisfactory labor agreements." As such, the plaintiffs argue that, because "public employers never consent to binding arbitration once an impasse in negotiations has been reached," there is "no hint that UCS would be willing to voluntarily engage in binding arbitration for the 2003–2007 labor agreement."

Initially, the Court reminds the plaintiffs that in determining whether it has jurisdiction over the plaintiffs' claims with regard to a Rule 12(b)(1) motion, it must accept as true all material factual allegations in the complaint but will not draw inferences in favor of the plaintiffs. *See Shipping Fin. Servs. Corp.*, 140 F.3d at 131. The Court finds that the issues set forth in the complaint require further factual development and are therefore not "purely legal." The complaint indicates that the labor agreement between the UCS and COBANC was scheduled to expire on March 31, 2003, which has now passed. In the complaint, the plaintiffs specifically seek relief to compel the UCS to submit to binding arbitration with CO-BANC under the Taylor Law "should the forthcoming collective bargaining negotiations reach an impasse." However, the plaintiffs have not informed the Court whether they have reached an impasse or whether the UCS is unwilling to engage in binding arbitration for the 2003–2007 labor agreement. Although the complaint states that the labor agreement was to expire on March 31, 2003, it is unclear whether the parties have engaged in negotiations over a new collective bargaining agreement or whether a dispute regarding the agreement exists between the parties. Thus,

the plaintiffs' concern that the UCS would be unwilling to engage in binding arbitration for the new collective bargaining agreement is purely speculative.

In addition, the plaintiffs have failed to show hardship if the Court does not resolve this case. If the plaintiffs are unsuccessful in negotiations and reach an impasse, they can commence an action at that point. Furthermore, the Taylor Law provides certain remedies where a public employer has not negotiated in good faith or deprives employees of their statutory rights. *See* N.Y. Civil Service Law § 209 a. As such, this Court finds that the issues in the complaint are not ripe for adjudication. Accordingly, the motion to dismiss for lack of subject matter jurisdiction is granted.

## C. The Plaintiffs' Constitutional Challenges

Although the Court finds that the issues in the complaint are not ripe for adjudication, to complete the record, the Court will address the defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

### 1. The Equal Protection Claim

The plaintiffs contend that there is no rational basis for distinguishing between members of COBANC and those employees entitled to compulsory arbitration, especially since court security officers have similar powers accorded to police officers. The Fourteenth Amendment of the United States Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d

313 (1985) (citation omitted). In order to establish an equal protection claim, the plaintiff must show that: (1) he was selectively treated compared with others similarly situated; and (2) the selective treatment was based on impermissible considerations, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure. *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000) (citation omitted); *Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996); *LaTrieste Restaurant & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994).

■ Where, as here, the alleged unequal treatment implicates neither a "fundamental right" nor is based on a suspect or quasi-suspect distinction such as race, religion, or alienage, the Court must apply a "rational basis review" to the statutory distinction. *Lamson v. Blumenthal,* 75 Fed.Appx. 811, 812, 2003 WL 22056244, at *1 (2d Cir.2003). Under a rational basis review, a legislative classification " 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for classification.' " *Id.* (quoting *Connolly v. McCall,* 254 F.3d 36, 42 (2d Cir.2001)). "The actual motivations of the enacting governmental body are irrelevant." *Mulroe v. New York State Thruway Authority,* 234 F.Supp.2d 446, 448 (S.D.N.Y.2002) (citing *FCC v. Beach Communications,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Moreover, the burden is on the plaintiff "to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (citation omitted).

■ The plaintiffs fail to meet their burden of negating any conceivable rational basis for providing compulsory arbitration for only certain public employees under the Taylor Law. *See Gonzalez v. City of New York,* 135 F.Supp.2d 385, 391–92 (E.D.N.Y.2001) (rejecting equal protection claims because plaintiff's "evidence is insufficient" to negative every possible basis that might support the government enactment); *Carbonell v. C.O. Acrish,* 154 F.Supp.2d 552, 562 (S.D.N.Y.2001) (same); *Decker v. City of Indianapolis,* No. 01 Civ. 1885, 2002 WL 1585622, at *2 n. 3 (S.D.Ind. July 17, 2002) ("Plaintiffs must demonstrate that there is no reasonable basis exists to justify the policy, not simply refute the justification offered by the policymaker").

■ Members of COBANC include court security officers, court clerks, office clericals, court attorneys, court reporters, interpreters, typists and secretaries. While it appears that some court security officers who are members of COBANC may possess similar authority as police officers, "courts are compelled under rational-basis review to accept a legislature's generalizations even where there is an imperfect fit between means and ends. A classification does not fail rational basis review because it 'is not made with mathematical nicety or because it results in some inequality.' " *Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (internal quotations and citations omitted).

Although members of COBANC indisputably perform critical and extremely valuable public service, the legislature did not deem court officers and other members of COBANC as essential to public health and safety. The impasse procedures in N.Y. Civil Service Law § 209 is the most detailed of the Taylor Law's several provisions. To ensure the "orderly and uninterrupted operations and func-

tions of government," the legislature deemed it important to have a compulsory arbitration process in place to resolve labor disputes in certain areas. N.Y. Civil Service Law § 200. The legislature specifically determined that impasses by police officers, fire fighters, and other miscellaneous public safety employees, and employees of the transit authority should be resolved by compulsory arbitration. N.Y. Civil Service Law §§ 209.4, 209.5.

These employees provide such essential services which, if momentarily disrupted, would cause clear and present danger to the public health and safety. *See Matter of Syracuse Hancock Professional Firefighters Assn. v. Newman,* 110 A.D.2d 256, 257–58, 494 N.Y.S.2d 191 (3d Dep't 1985) ("special need to lessen the likelihood of work stoppages in the sensitive areas of public safety in which municipal and fire departments function"). "Rational basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Connolly,* 254 F.3d at 42. Thus, it is clear that a rational basis exists to distinguish among groups of public employees. Accordingly, the Equal Protection claim must be dismissed.

### 2. The Procedural Due Process Claim

 The plaintiffs next claim that their constitutional right to procedural due process is being abridged by the operation of the Taylor Law. To prevail on a procedural due process claim, a plaintiff must identify a liberty or property interest and demonstrate that the state has deprived it of that interest without due process of law. *Ciambriello v. County of Nassau,* 292 F.3d 307, 313 (2d Cir.2002).

 Here, the Court finds that plaintiffs fail to identify a legitimate liberty or property interest that has been interfered with by the state. Citing to the N.Y. Civil Service Law § 200, the plaintiffs contend the Taylor Law confers upon them a right to require the UCS "to negotiate with and enter into written agreements" with CO-BANC. The plaintiffs further contend that the defendants "have utilized procedures of the Taylor Law to eviscerate . . . state-created property interest."

Although the plaintiffs fail to elaborate on these points, it appears that they are arguing either that they have a property right in having a collective bargaining agreement or that they have a property right in a change in the procedures to be followed in the event of impasse. However, as the defendants properly point out, the plaintiffs do not have a property right in the negotiating process that might lead to a mutually agreeable collective bargaining agreement. *Local 342 v. Town Board of the Town of Huntington,* 31 F.3d 1191, (2d Cir.1994). The Taylor law "neither creates nor confers any right or benefit in favor of employees." *Id.* at 1195. Furthermore, because the plaintiffs are not included in the list of employees entitled to compulsory arbitration, they have no due process entitlement to such a procedure in the event of impasse. Because the plaintiffs have not identified a "liberty" or "property" interest of which they have been deprived, their procedural due process claim must be dismissed.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion to dismiss the complaint is **GRANTED;** and is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**