SUPREME COURT OF MISSOURI
 en banc
MISSOURI NATIONAL ) Opinion issued June 1, 2021
EDUCATION ASSOCIATION, et al., )
 )
 Respondents, )
 )
v. )
 )
MISSOURI DEPARTMENT OF )
LABOR AND INDUSTRIAL ) No. SC98412
RELATIONS, et al., )
 )
 Appellants, )
 )
FERGUSON-FLORISSANT )
SCHOOL DISTRICT, et al., )
 )
 Defendants. )

 APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
 The Honorable Joseph Walsh III, Judge

 This appeal concerns the constitutional validity of House Bill No. 1413, enacted in

2018, which significantly altered many aspects of public labor relations in Missouri. The

circuit court found the challenged provisions of HB 1413 violated multiple provisions of

the Missouri Constitution and permanently enjoined its operation and enforcement.
 Specifically, the circuit court found, in part, the exemption of public safety labor

organizations in section 105.503.2(1) 1 creates a scheme that effectively disfavors non-

public safety labor organizations and violates public employees’ right to bargain

collectively through representatives of their own choosing, in violation of article I,

section 29. The circuit court also found the exemption of public safety labor

organizations violates article I, section 2 of the Missouri Constitution, which guarantees

equal protection, because the exemption makes little sense given the purported

justifications for the different treatment. This Court agrees the exemption violates article

I, section 2.

 The circuit court further found the exemption of public safety labor organizations

permeates throughout HB 1413. As a result, it found the valid provisions of HB 1413

were so essentially and inseparably connected with, and so dependent upon, this

constitutionally invalid provision that it could not be presumed the legislature would have

enacted those provisions without it. This Court agrees. Pursuant to section 1.140, RSMo

2016, this Court is required to declare HB 1413 void in its entirety, rather than severing

the offending provision. The circuit court’s grant of the plaintiffs’ motion for summary

judgment, declaring HB 1413 void in its entirety and permanently enjoining the

defendants from administering or enforcing any provision of HB 1413, is affirmed.

1
 All statutory references are to RSMo Supp. 2018, unless otherwise specified.
 2
 Background

 Prior to the General Assembly’s enactment of HB 1413, Missouri’s public labor

law, codified in section 105.500, RSMo 2016, et seq., created a loose collective-

bargaining framework for public employees. Including definitions, the entire law

spanned five brief sections. Section 105.510, RSMo 2016, provided, with certain

exceptions, 2 that “[e]mployees . . . of any public body shall have the right to form and

join labor organizations and to present proposals to any public body relative to salaries

and other conditions of employment through the representative of their own choosing.”

An “exclusive bargaining representative” was designated or selected by a majority of

employees in an appropriate unit as the representative of those employees. Section

105.500(2), RSMo 2016. If issues arose concerning the appropriateness of bargaining

units or majority representative status, the state board of mediation resolved the disputes.

Section 105.525, RSMo 2016. Public bodies were required to meet and confer with labor

organizations:

 Whenever such proposals are presented by the exclusive bargaining
 representative to a public body, the public body or its designated
 representative or representatives shall meet, confer and discuss such
 proposals relative to salaries and other conditions of employment of the
 employees of the public body with the labor organization which is the
 exclusive bargaining representative of its employees in a unit appropriate.
 Upon the completion of discussions, the results shall be reduced to writing
 and be presented to the appropriate administrative, legislative or other
 governing body in the form of an ordinance, resolution, bill or other form
 required for adoption, modification or rejection.

2
 Section 105.510, RSMo 2016, excluded police, deputy sheriffs, Missouri state highway patrol
troopers, Missouri National Guard members, and all teachers of Missouri schools, colleges, and
universities.
 3
Section 105.520, RSMo 2016. No right to strike was provided for public labor

organizations. Section 105.530, RSMo 2016.

 HB 1413 significantly altered many aspects of public labor relations in Missouri

by repealing sections 105.500, 105.520, 105.525, 105.530, 3 and 208.862 and enacting 21

new sections. Among its new provisions, HB 1413 requires labor organizations to adopt

a constitution and bylaws and provide detailed reporting and annual filings. Section

105.533. HB 1413 also mandates officers and employees of labor organizations file

certain disclosures. Section 105.535. Public employees must annually authorize

withholding labor organization dues and fees from their earnings. Section 105.505.1.

Annual authorizations are also required from public employees for the labor organization

to use dues for political contributions or expenditures. Section 105.505.2. The bill

further prevents supervisory employees from being included in the same bargaining unit

as those they supervise and also disallows the same labor organization to represent both

supervisory and non-supervisory employees. Section 105.570. In addition, HB 1413

transforms the manner in which a labor organization is selected and retained. A labor

organization can gain recognition only through an election conducted before the state

board of mediation, for a fee, by secret ballot with more than 50 percent of all public

employees within the bargaining unit voting positively to certify the labor organization. 4

Section 105.575.1, .5, .8, .15. Once certified, labor organizations must be recertified

3
 HB 1413 did not amend section 105.510.
4
 In other words, HB 1413 no longer permits voluntary recognition, and an election’s outcome is
no longer determined by a majority of votes cast in the election.
 4
every three years. Section 105.575.12. Finally, HB 1413 imposes additional limitations

on the formation and coverage of labor agreements between public bodies and labor

organizations. Sections 105.580, 105.585.

 The revised provisions of sections 105.500 to 105.598 “apply to all employees of a

public body, all labor organizations, and all labor agreements between such a labor

organization and a public body.” Section 105.503.1. A “labor organization” is defined as

 any organization, agency, or public employee representation committee or
 plan, in which public employees participate and that exists for the purpose,
 in whole or in part, of dealing with a public body or public bodies concerning
 collective bargaining, grievances, labor disputes, wages, rates of pay, hours
 of employment, or conditions of work.

Section 105.500(5). A public body is defined as “the state of Missouri, or any officer,

agency, department, bureau, division, board or commission of the state, or any other

political subdivision or special district of or within the state” but excludes the department

of corrections. Section 105.500(6).

 HB 1413’s provisions, however, do not apply to “[p]ublic safety labor

organizations and all employees of a public body who are members of a public safety

labor organization” or to the department of corrections and its employees. Section

105.503.2. The definition of a “public safety labor organization,” found in section

105.500(8), is a labor organization that “wholly or primarily represent[s] persons trained

or authorized by law or rule to render emergency medical assistance or treatment . . . and

persons who are vested with the power of arrest for criminal code violations.”

 The day before HB 1413 was to go into effect, seven labor unions—Missouri

National Education Association; Ferguson-Florissant National Education Association;

 5
Hazelwood Association of Support Personnel; Laborers’ International Union of North

America, Local Union No. 42; Miscellaneous Drivers, Helpers, Healthcare and Public

Employees Union Local No. 610, International Brotherhood of Teamsters; International

Union of Operating Engineers, Local 148; and Service Employees International Union

Local 1—(collectively, the “Labor Unions”) sued the state agencies authorized to

implement and enforce HB 1413, the employers of the bargaining units represented by

the Labor Unions, and the prosecutor 5 who would enforce HB 1413’s criminal provisions

(collectively, the “State”). The Labor Unions are not public safety labor organizations

and would be subject to all provisions of HB 1413. The Labor Unions argued HB 1413

violated provisions of the state constitution, namely the right to collective bargaining in

article I, section 29; the equal protection provision of article I, section 2; and the right to

freedom of speech and association in article I, sections 8 and 9. The Labor Unions

alleged the unconstitutional provisions of HB 1413 were not severable and that HB 1413

should be declared unconstitutional in its entirety. The circuit court preliminarily

enjoined the State from administering or enforcing any provision of HB 1413.

 The Labor Unions moved for summary judgment, seeking to permanently enjoin

the operation and enforcement of HB 1413. The circuit court granted summary judgment

in favor of the Labor Unions, finding, in large part, exempting public safety labor

organizations from the provisions in HB 1413 violates constitutional protections. It

found the exemption could not be severed. As a result, HB 1413 was declared void in its

5
 St. Louis County Prosecuting Attorney Wesley Bell was named.
 6
entirety, and the State was permanently enjoined from administering or enforcing any

provision of it. The State appeals. 6

 Standard of Review

 This Court reviews the grant of summary judgment de novo. Sofia v. Dodson, 601

S.W.3d 205, 208 (Mo. banc 2020). Summary judgment is appropriate when the movant

establishes a lack of genuine issue regarding the material facts and entitlement to

judgment as a matter of law. Id. at 208-09. This Court also reviews de novo a challenge

to the constitutional validity of a statute. Mo. State Conference of NAACP v. State, 607

S.W.3d 728, 734 (Mo. banc 2020). Although a statute is presumed valid, if it conflicts

with provisions in the state constitution, this Court must find the statute invalid.

Priorities USA v. State, 591 S.W.3d 448, 452 (Mo. banc 2020). The challenger bears the

burden of proving the statute’s constitutional invalidity. Id.

 Analysis

 The State raises six points on appeal, contending the circuit court erred by finding:

(1) HB 1413 violated article I, section 29; (2) HB 1413 violated article I, section 2;

(3) HB 1413 violated article I, sections 8 and 9; (4) summary judgment to be appropriate;

(5) HB 1413 to be facially invalid; and (6) severance was not appropriate. As explained

below, this Court finds the violation of article I, section 2 to be dispositive.

6
 This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.
 7
 I. The exemption of public safety labor organizations in HB 1413
 violates article I, section 2

 Article I, section 29 of the Missouri Constitution provides “[t]hat employees shall

have the right to organize and to bargain collectively through representatives of their own

choosing.” This right applies to both private-sector and public-sector employees. Indep.-

Nat’l Educ. Ass’n v. Indep. Sch. Dist., 223 S.W.3d 131, 133 (Mo. banc 2007). The

purpose of article I, section 29 is “to protect employees against legislation or acts which

would prevent or interfere with their organization and choice of representatives for the

purpose of bargaining collectively.” Quinn v. Buchanan, 298 S.W.2d 413, 419 (Mo. banc

1957), overruled on other grounds by E. Mo. Coal. of Police, Fraternal Ord. of Police,

Lodge 15 v. City of Chesterfield, 386 S.W.3d 755 (Mo. banc 2012).

 The State argues the circuit court erred in finding HB 1413 violates article I,

section 29 by infringing on public employees’ right to bargain “through representatives of

their own choosing.” This right equates to “employees hav[ing] complete freedom of

choice to organize and choose their collective bargaining representatives.” Quinn, 298

S.W.2d at 417. Inherent in this freedom of choice is that “[c]oercion from any source is a

denial of this right and a direct infringement on it[.]” Id. Early cases interpreted

employees’ right to “representatives of their own choosing” in the context of picketing in

an attempt to cause an employer to pressure its employees to join a union. E.g., Bellerive

Country Club v. McVey, 284 S.W.2d 492, 500 (Mo. banc 1955) (noting “the right

guaranteed to employees by Art. I, Sec. 29, Mo.Const.1945, ‘to organize and to bargain

 8
collectively through representatives of their own choosing’ is a free choice, uncoerced by

management, union, or any other group or organization”).

 The State contends provisions of HB 1413 promote employees’ free choice in

union elections by mandating secret-ballot elections, periodic recertification, and

absolute-majority votes. Regardless of these purported benefits, those voting provisions

apply to only non-public safety labor organizations because of section 105.503.2(1)’s

exemption of public safety labor organizations. Moreover, all other provisions in

HB 1413, relating to topics ranging from annual authorizations to reporting and

disclosure requirements, also apply only to non-public safety labor organizations. The

end result of exempting public safety labor organizations in HB 1413 is a myriad of

requirements on all other labor organizations.

 To avoid the significant additional restrictions and requirements imposed by HB

1413, a bargaining unit of employees not associated with public safety-related job

functions would reasonably be pressured to be represented by a public safety labor

organization that “primarily represent[s] persons trained or authorized by law or rule to

render emergency medical assistance or treatment . . . and persons who are vested with

the power of arrest for criminal code violations.” See section 105.500(8). Likewise, a

bargaining unit of employees with public-safety related job functions would be

incentivized to seek representation from a public safety labor organization. 7 Logically,

7
 A labor organization could represent bargaining units comprised of employees from both public
safety and non-public safety positions. As an example, the Labor Unions point to Laborers’
International Union of North America, Local Union No. 42 and Miscellaneous Drivers, Helpers,
Healthcare and Public Employees Union Local No. 610, International Brotherhood of Teamsters,
 9
the framework of HB 1413 creates pressure to join a labor organization exempt from

these requirements.

 The Labor Unions argue coercion of this nature in the decision of selecting a

representative conflicts with the constitutional right of employees to bargain collectively

“through representatives of their own choosing.” Because it forces them to choose

between representation by a labor organization saddled with additional restrictions and

one without, they contend employees have lost their complete freedom of choice to

organize and choose their collective bargaining representatives. This Court need not

resolve whether article I, section 29 would be violated by a collective-bargaining

framework that provides a strong incentive to affiliate with one type of labor organization

over another, for even if that were not the case, the bill violates the equal protection

provision contained in article I, section 2.

 The Missouri Constitution guarantees its citizens the equal protection of the laws.

Mo. Const. art. I, sec. 2. This Court applies a two-step analysis for equal protection

violation claims. Amick v. Dir. of Revenue, 428 S.W.3d 638, 640 (Mo. banc 2014). A

court must first determine whether a fundamental right is at issue. If there is no

fundamental right at issue, “a court will apply a rational-basis review to determine

whether the challenged law is rationally related to some legitimate end.” Id. There is no

need to evaluate whether or to what extent the exemption for public safety labor

as labor organizations that represent a combination of employees both in public safety and not in
public safety positions, but neither primarily represents those in public safety positions.
 10
organizations infringes upon fundamental rights because this exemption fails even the

rational basis test.

 Under rational basis review, the party challenging the constitutional validity of the

statute must overcome the presumption the statute has a rational basis “by a clear

showing of arbitrariness and irrationality.” Cosby v. Treasurer of State, 579 S.W.3d 202,

209 (Mo banc. 2019) (citation omitted). The Labor Unions have met that burden. Each

of the State’s proffered rational bases concerns public safety employees and the important

work they perform. Whether these might have sufficed had the exemption at issue

protected public safety employees is not at issue, for it exempts only public safety labor

organizations.

 HB 1413 defines public safety labor organizations as those labor organizations

which “primarily”—but not necessarily exclusively—represent public safety employees.

Section 105.503.2(1). Accordingly, by definition, public safety labor organizations are

not limited to public safety employees, nor do public safety labor organizations

encompass representation of all public safety employees. As a result, HB 1413’s public

safety labor organization exemption does not apply to only or all public safety employees

involved in collective bargaining. Public safety employees represented by labor

organizations that “primarily” represent other types of employees will not be protected by

HB 1413’s exemption. Rather, public safety employees will benefit from the exemption

only so long as the labor organization that represents them “primarily” represents public

safety employees. As a result, despite the State’s arguments to the contrary, the type of

labor organization, not the type of employee, creates the basis for the exemption.

 11
 Leaving aside that the exemption for public safety labor organizations supplies

preferential status for certain labor organizations over others and not certain employees

over others, there is no rational basis for protecting public safety employees from most—

if not all—of the new provisions in HB 1413. In fact, the opposite is true. For example,

section 105.585(2) requires that every labor agreement expressly prohibit covered

employees from going on strike. While a rational basis would exist in some

circumstances for including public safety employees given the importance of the work

they do and the need to protect against interruptions in their service, HB 1413 and its

exemption for public safety labor organizations protects those labor organizations—and

only those labor organizations—from this requirement.

 Although the dissenting opinion correctly notes that public-sector labor laws may

treat dissimilar types of public-sector employees differently if there is a rational basis for

such a differentiation, the cases it cites reflect differential treatment based on job

function. Slip op. at 7-8. There may well be situations in which this type of separate

treatment can be rational, 8 but that question does not apply here because HB 1413

differentiates groups of employees based on their affiliation with other employees,

regardless of job functions of those employees. Although the dissenting opinion states

that “public safety labor organizations represent different groups of employees than other

8
 Although police, deputy sheriffs, state highway patrol troopers, members of the Missouri
National Guard, and teachers have been excluded from the public-sector labor law, section
105.510, this different treatment turns on job function. The dissenting opinion criticizes the
Labor Unions for not commenting about whether the exemption for employees of the department
of corrections violates the equal protection clause, slip op. at 4 n.1, but this question is not before
the Court.
 12
public-sector labor organizations,” slip op. at 5, this is not true, as is evident from how

HB 1413 defines a “public safety labor organization.” Again, pursuant to section

105.500(8), a labor organization is classified as a “public safety labor organization” if the

labor organization “primarily” represents those with public safety positions. The

composition of public safety labor organizations and non-public safety labor

organizations may be, by definition, quite similar. The distinction merely turns on

whether those with public safety positions constitute a simple majority of the

organization’s membership. A labor organization composed of 51 percent public safety

employees is similarly situated to a labor organization composed of 49 percent public

safety employees. HB 1413, however, would treat the two drastically different. The

dissenting opinion’s conclusion that the two classifications are not similarly situated is

incorrect. Distinctions noted by the dissenting opinion, such as public safety employees

having lower turnover or higher unionization rates, slip op. at 5-6, are wholly irrelevant

when those public safety employees may be in either a public safety labor organization or

a non-public safety labor organization.

 These defects make it unnecessary to address the Labor Unions’ other arguments

for, in themselves, they demonstrate each of the State’s asserted rational bases is neither

rational nor an apparent basis for the provision. Instead, the only effect (and, therefore,

the only evident purpose) of the exemption for public safety labor organizations is to give

preferential treatment to some labor organizations over others for some reason other than

 13
those employees they represent. Accordingly, this exemption violates equal protection

and is invalid on that ground. 9

 II. Severance of the exemption is inappropriate

 While maintaining that the exemption of public safety labor organizations is valid,

the State urges this Court to sever this provision if it is found unconstitutional. The

Labor Unions argue that, because the exemption of public safety labor organizations

reaches every other provision in the public labor law, HB 1413 should be declared void in

its entirety.

 Severance is addressed in section 1.140, RSMo 2016, which provides that

unconstitutional provisions of a statute should be severed from otherwise valid provisions

unless:

 the valid provisions of the statute are so essentially and inseparably
 connected with, and so dependent upon, the void provision that it cannot be
 presumed the legislature would have enacted the valid provisions without the
 void one; or unless the court finds that the valid provisions, standing alone,
 are incomplete and are incapable of being executed in accordance with the
 legislative intent.

(Emphasis added).

 The State reasons severance is appropriate pursuant to section 1.140, RSMo 2016,

because the otherwise valid provisions of HB 1413 are not “so essentially and

9
 The State also contends summary judgment in favor of the Labor Unions is not appropriate
because there are disputes over material facts. The material facts at issue, according to the State,
involve the extent of the burden imposed by each restriction in HB 1413 and the justifications for
those restrictions. Because this Court holds the exemption fails to pass the rational basis test,
summary judgment was appropriate under article 1, section 2. No factual dispute would alter
this analysis.
 14
inseparably connected with, and so dependent upon,” the exemption of public safety

labor organizations “that it cannot be presumed the legislature would have enacted the

valid provisions without” it. 10 The Labor Unions note both the interrelated character of

the exemption with other provisions of HB 1413 and evidence that the exemption for

public safety labor organizations was adopted to secure passage of the entire law. 11

 In fact, HB 1413 left the Missouri House of Representatives as a brief, two-page

act focused on transparency in labor organizations. It took its existing form in a Missouri

Senate committee, but it left that committee without the exemption. It was not until HB

1413 was under consideration by the full senate that the exemption was added in a senate

substitute. The next day, the house passed the senate substitute, and the legislation went

to the governor’s desk.

 Our caselaw wisely counsels against severance when severance would effectuate

an outcome the legislature avoided. For example, in Preisler v. Calcaterra, 243 S.W.2d

62 (Mo. banc 1951), this Court found a statute limiting the right of watchers during

10
 The State also notes in Karney v. Department of Labor & Industrial Relations, 599 S.W.3d
157 (Mo. banc 2020), this Court previously severed a single provision of HB 1413. Karney is
distinguishable from the challenge here. In Karney, five words—“and picketing of any kind”—
were severed from section 105.585(2) because the prohibition against “picketing of any kind”
was too broad. Id. at 166-67. The severed language impermissibly violated public employees’
freedom of speech to picket about matters of public concern when that picketing did not impede
the efficiency of public services. Id. at 164. The State urges this Court to use a scalpel, as was
done to excise five words from HB 1413 in Karney, rather than a blunderbuss. But unlike the
isolated issue addressed in a single provision in Karney, the obstacle of the public safety labor
organization exemption flows to all provisions of HB 1413.
11
 Amicus Curiae Missouri Fraternal Order of Police also argues HB 1413 would have failed
without the exemption. The Fraternal Order of Police, in its amicus brief arguing against
severance, notes it actively lobbied against HB 1413 before the exemption was added and, had
the exemption not been included, it and other first responders would have opposed HB 1413
during the legislative process.
 15
general elections in the city of St. Louis to the two largest parties, when no other area in

the state was subject to such restriction, to violate constitutional provisions for equal

rights and equal protection. Id. at 64-65. Faced with the prospect of severing a clause in

the statute, the effect of which would be to allow all political parties to have watchers,

this Court instead struck the entire statute because the original legislation clearly sought

to limit that number of poll watchers to no more than two. Id. at 66 (noting, “if the

elimination of such clauses leaves the remaining portions of the statute so that they do not

express the true legislative intent but are instead in conflict with it, the statute should not

be upheld”).

 State ex rel. Transport Manufacturing & Equipment Co. v. Bates, 224 S.W.2d 996

(Mo. banc 1949), provides another example. In that case, this Court found a use tax

excluding motor vehicles with a seating capacity of 10 passengers or more to be arbitrary.

Id. at 1000-01. Faced with the question of whether the invalid exemption infected the

entire legislative act, this Court noted:

 The fact that the residue of an act remaining after a portion has been declared
 invalid may be complete in and of itself is not always sufficient to sustain it.
 If the invalid portion is so connected with the residue of the statute as to
 furnish the consideration for the enactment of the residue and as to warrant
 the belief that they were intended as a whole and that the Legislature would
 not have passed the part remaining had it known the other part would be held
 invalid, then the entire act must fall.

Id. at 1001. This Court ultimately determined it had “no power by construction to extend

the scope of a taxing statute and make it applicable to those to whom the General

Assembly never intended it should apply, thus taxing those whom the Legislature said

shall not be taxed.” Id.

 16
 The State’s argument in favor of severance of the exemption is illogical in that the

result would make public labor law reform applicable to public safety labor

organizations, which the legislature specifically excluded. The exemption is not

concerned with a singular provision or aspect of the bill; rather, it provides an exemption

from the overall statutory scheme itself, which consists of approximately 20 sections.

Even without giving weight to the late addition of the exemption in the legislative

process, this Court refuses to sever the exemption and make this public labor reform law

applicable to public safety labor organizations when the legislature contemplated this

application and intentionally crafted section 105.503.2(1) to avoid such an outcome.

 This Court cannot say the legislature would have enacted the valid provisions of

HB 1413 without this void one. If the legislature desired to pass a scheme imposing

reform provisions to all public labor organizations, it had the opportunity to do so. But it

did not; it specifically provided the reform provisions would not apply to public safety

labor organizations. This Court will not, by severance, leave in place legislation contrary

to the legislature’s intent. By its plain language, section 105.503.2(1) is essentially and

inseparably connected with all other provisions of HB 1413; therefore, HB 1413 must be

declared void in its entirety.

 The State also contends Sessions v. Morales-Santana, 137 S. Ct. 1678 (2017),

supports severability of the public safety labor organization exemption. In that case, the

Supreme Court analyzed an exception in the law that provided that unwed United States-

citizen mothers, as compared with unwed United States-citizen fathers, could transmit

citizenship through a reduced physical-presence requirement in the country for a child

 17
born abroad. Id. at 1686-87. The Supreme Court found the exception violated equal

protection principles. Id. at 1698. The Supreme Court subsequently addressed whether

the shorter timeframe applicable to unwed United States-citizen mothers should be

extended to unwed United States-citizen fathers and their children. Id. at 1698-1700.

Believing Congress would have preferred preservation of the longer physical-presence

requirements in the law, the Supreme Court applied the longer timeframe to both unwed

United States-citizen fathers and mothers alike instead of making the shorter timeframe in

the exception more broadly applicable. Id.

 Relying on Morales-Santana, the State urges this Court to sever the exemption of

public-safety labor organizations and extend all of HB 1413’s reform provisions to both

public safety and non-public safety labor organizations. Morales-Santana referenced two

considerations that should occupy a court in considering whether, if apprised of a

constitutional infirmity, the legislature would have struck the exception or broadened the

exception to cure the constitutional violation: (1) “the intensity of commitment to the

residual policy” and (2) “the degree of potential disruption of the statutory scheme that

would occur by extension as opposed to abrogation.” Id. at 1700 (quoting Heckler v.

Mathews, 465 U.S. 728, 739 n.5 (1984)).

 Assuming Morales-Santana applies to this case, its analysis is distinguishable

from the result reached here. There, the Supreme Court found Congress would have

preferred the exception be abrogated. Id. In reaching that conclusion, the Supreme Court

noted “[t]he primacy of [the general framework for the acquisition of citizenship at birth]

in the statutory scheme [was] evident.” Id. at 1686.

 18
 The State contends the many reform provisions in HB 1413 indicate the intensity

of commitment to the residual policy of public labor reform. The mere numerosity of

reform provisions is insufficient to make it evident that across-the-board reform,

applicable to every public labor organization in the state, was the driving force of

HB 1413. The legislature may have found reform important, but, of course,

section 105.503.2(1) indicates the legislature did not believe the reform should apply to

all public labor organizations.

 The State also argues complete abrogation of HB 1413 would cause the greatest

possible disruption. If this Court severed the exemption, public safety labor

organizations would become subject to all requirements of HB 1413. The problem with

this result is that far more labor organizations would be burdened with restrictions than

the legislature intended, which would cause great disruption to the statutory scheme.

 19
 Conclusion

 The exemption of public safety labor organizations violates principles of equal

protection. The exemption of public safety labor organizations permeates throughout

HB 1413 and reaches all provisions. The operation of this exemption forces this Court to

declare HB 1413 void in its entirety rather than sever the offending provision. The circuit

court’s judgment is affirmed.

 ______________________________
 Mary R. Russell, Judge

Draper, C.J., Wilson, Breckenridge, JJ., and
Stith, Sr.J., concur; Powell, J., dissents in separate
opinion filed and Fischer, J., concurs in opinion of Powell, J.

 20
 SUPREME COURT OF MISSOURI
 en banc
MISSOURI NATIONAL )
EDUCATION ASSOCIATION, et al., )
 )
 Respondents, )
 )
v. ) No. SC98412
 )
MISSOURI DEPARTMENT OF )
LABOR AND INDUSTRIAL )
RELATIONS, et al., )
 )
 Appellants, )
 )
FERGUSON-FLORISSANT )
SCHOOL DISTRICT, et al., )
 )
 Defendants. )

 DISSENTING OPINION

 The exemption for public safety labor unions in House Bill No. 1413 does not

violate Missouri Constitution’s equal protection provision found in article I, section 2.

Because the public safety exemption is not unconstitutional, the exemption does not

support invalidating HB 1413 and enjoining the bill from becoming law as the principal

opinion concludes. For these reasons, I respectfully dissent.
 Background

 In 2007, this Court recognized the right to organize and engage in collective

bargaining as guaranteed by the Missouri Constitution is endowed not only to private-

sector employees but also public employees, who had previously been exempted. Indep.

Nat. Educ. Ass'n v. Indep. Sch. Dist., 223 S.W.3d 131, 140 (Mo. banc 2007). While

extending these rights to public-sector employees, this Court acknowledged that,

“[u]nquestionably, public employees are differently situated from private employees and

are treated differently under the law.” Id. at 133. This Court articulated at least two reasons

for this fundamental difference. “The first is that many public employees—especially

police and firefighters—are deemed essential to the preservation of public safety, health,

and order.” Id. (emphasis added). “The second is that the economic forces of the

marketplace—that limit, at least in theory, the extent to which employers can meet

employee groups’ demands—do not constrain the public sector.” Id. “In the public sector,

meeting the demands of employee groups is thought to infringe on the constitutional

prerogative of the public entity’s legislative powers by forcing the entity to raise taxes or

distribute public services in a manner inconsistent with the best judgment of the entity’s

governing board.” Id.

 In 2018, the United States Supreme Court delivered another landmark ruling in the

area of public sector labor relations when it decided Janus v. American Federation of State,

County, & Municipal Employees, Council 31, 138 S. Ct. 2448 (2018), and provided

protections for public sector employees represented by unions. The Court in Janus held

 2
that withholding union dues from public employees who have not clearly and affirmatively

consented to paying union dues violates the First Amendment. Id. at 2486.

 In the context of these two significant court rulings, the General Assembly passed

HB 1413 in 2018. This extensive piece of legislation regulates non-public safety public-

sector labor organizations, specifically the manner and practice in which unions engage in

collective bargaining with public entities and organize public employees. HB 1413

establishes new rules and protocols for public-sector union elections that provide

protections for public employees’ rights, including those recognized by Janus. Other

provisions of the bill the terms of public-sector labor agreements to address the unique

challenges and circumstances surrounding public-sector collective bargaining as this Court

expressly identified in Independence. Indep. Sch. Dist., 223 S.W.3d at 133.

 A group of non-public safety public-sector labor organizations (“Labor Groups”)

filed suit seeking to invalidate and enjoin enforcement of HB 1413 before the bill took

effect. The Labor Groups challenged the constitutional validity of this comprehensive bill

alleging HB 1413 violated the right to organize and collectively bargain, equal protection,

and the right to freedom of speech and association as guaranteed by the Missouri

Constitution. After the circuit court entered a preliminary injunction enjoining

enforcement of HB 1413, the Labor Groups moved for summary judgment. Over the

State’s opposition, the circuit court granted summary judgment in favor of the Labor

Groups, finding HB 1413 unconstitutional, invalidating the bill, and permanently enjoining

its enforcement. The State appeals. The principal opinion affirms the circuit court ruling

speciously contending HB 1413 violates equal protection and justifies invalidating and

 3
permanently enjoining this comprehensive public section labor organization bill from

becoming law.

 Equal Protection Analysis

 HB 1413 is not unconstitutional as the principal opinion concludes. The principal

opinion contends the public safety union exemption in HB 1413 violates the Missouri

Constitution’s equal protection provision found in article I, section 2. Article I, section 2

provides that a law may treat groups of people or entities differently, but it cannot treat

similarly situated persons or entities differently without adequate justification. Doe v.

Phillips, 194 S.W.3d 833, 845 (Mo. banc 2006). The principal opinion incorrectly finds

public safety unions and non-public safety unions are similarly situated entities and there

is no rational basis for treating these two types of public-sector unions differently. 1 There

1
 Public safety unions are not the only entities exempted from HB 1413. The department
of corrections, which currently employs more than 10,000 Missourians, and the labor
organizations that represent these employees are also exempted from the regulatory
framework of HB 1413. “[P]ublic safety labor organization” is defined by HB 1413 as “a
labor organization wholly or primarily representing” certain categories of trained
employees. § 105.500 (8), RSMo Supp. 2018 (emphasis added). “Labor organization” is
defined as an organization in which “public employees participate and that exists for the
purpose, in whole or in part, of dealing with a public body or public bodies concerning
collective bargaining, grievances, labor disputes, wages, rates of pay, hours of
employment, or conditions of work.” § 105.500 (5), RSMo Supp. 2018 (emphasis added).
HB 1413 defines “public body” to exclude the department of corrections. § 105.500 (6),
RSMo Supp. 2018. Accordingly, to be a labor organization governed by HB 1413, the
group must deal with a public body, other than the department of corrections. By
definition, therefore, a labor organization that represents department of corrections
employees is not a public safety labor organization but is also exempt from the regulations
and protocols in HB 1413. Curiously, the Labor Groups do not argue the department of
corrections exemption violates the equal protection clause.
 4
are, however, adequate justifications for treating these dissimilar labor organizations

differently under the law.

 “[T]o successfully raise an equal protection challenge, one first must show that he

or she is similarly situated to those who he alleges receive different treatment.” Coyne v.

Edwards, 395 S.W.3d 509, 519 (Mo. banc 2013). “The similarly situated standard is a

‘rigorous one’ requiring proof that the two classes ‘were similarly situated in all relevant

aspects.’” Id. (emphasis added) (quoting Murray v. Sw. Mo. Drug Task Force, 335 S.W.3d

566, 569 (Mo. App. 2011)). The Labor Groups have not demonstrated that public safety

unions and non-public safety unions are similarly situated in all relevant aspects. As the

principal opinion notes, HB 1413 establishes different rules of selection, participation, and

governance for public-sector labor organizations versus public safety labor organizations

through the public safety exemption. Therefore, for purposes of determining whether these

separate labor organizations are similarly situated, the analysis should turn to traits that

affect union selection, participation, and governance.

 As defined by HB 1413, public safety labor organizations “wholly or primarily”

represent men and women who serve as public safety officers. § 105.500 (8), RSMo Supp.

2018. Other public-sector labor organizations may represent public safety employees, but

if a labor organization “wholly or primarily” represents public safety officers, then it would

be considered a public safety labor organization. Therefore, by definition, public safety

labor organizations represent different groups of employees than other public-sector labor

organizations. For example, public safety employees demonstrate lower rates of turnover

than non-public safety employees. This affects a public employer’s management practices

 5
in hiring and promotion—one of the topics for which negotiation is restricted for non-

public safety organizations by HB 1413. Additionally, unionization rates are higher among

public safety employees than other public employees. 2 The combination of lower turnover

and higher union participation makes public safety labor organizations differently situated

than non-public safety organizations with respect to the employees’ certification of their

collective bargaining agreements. These examples illustrate how selection, participation

and governance may differ between public safety and non-public safety public-sector labor

organizations. Public safety unions, therefore, differ from non-public safety unions, and

these differences highlight that these organizations are not similarly situated in all relevant

aspects for an equal protection analysis of this legislation. Differently situated entities may

be treated differently without running afoul of article I, section 2.

 Even if both types of labor organizations were similarly situated, there is a rational

basis for distinguishing between them. Under rational basis review, a statute must be

upheld if there is any “reasonably conceivable state of facts that . . . provide[s] a rational

basis for the classification.” Kan. City Premier Apartments, Inc. v. Mo. Real Estate

Comm’n, 344 S.W.3d 160,170 (Mo. banc 2011) (alterations in original) (quoting FCC v.

Beach Commc’ns, Inc., 508 U.S. 307, 313 (1993)). “Rational basis review is highly

deferential, and courts do not question the wisdom, social desirability or economic policy

underlying a statute.” Estate of Overbey v. Chad Franklin Nat’l Auto Sales N., LLC, 361

2
 Federal data show unionization is highest among “protective services” at 36.6 percent,
compared to the national average of 10.8 percent for the year 2020. U.S. BUREAU OF
LABOR STATISTICS: UNION MEMBERS SUMMARY (2021),
https://www.bls.gov/news.release/union2.nr0.htm.
 6
S.W.3d 364, 378 (Mo. banc 2012) (internal quotations omitted) (citing Comm. for Educ.

Equal. v. State, 294 S.W.3d 477, 491 (Mo. banc 2009)). “Instead, all that is required is that

this Court find a plausible reason for the classifications in question.” Id. (alteration

omitted).

 Public-sector labor laws often treat different types of public-sector employees

differently, both in Missouri and in other states around the country. In Missouri, public

school teachers historically were exempted from public-sector labor laws. Indep. Sch.

Dist., 223 S.W.3d at 134. Other groups such as police and highway patrol officers have

also been governed differently. Id. at 134 n.2. When the General Assembly enacted

Missouri’s first public sector labor law in 1965, it established public-sector labor

organization rules that exempted police, deputy sheriffs, highway patrolmen, members of

the national guard, and teachers. See §§ 105.500-.530, RSMo Supp. 1965. This law, with

some revisions, governed public-sector labor organizations until the passage of HB 1413,

and these distinctions have persisted. Our own Court has noted the distinction between

police and firefighters and other public employees. Indep. Sch. Dist., 223 S.W.3d at 133

(“[M]any public employees—especially police and firefighters—are deemed essential to

the preservation of public safety, health, and order.”). HB 1413’s exemption of public

safety labor organizations, therefore, is not an irrational anomaly.

 Labor laws elsewhere have also differentiated between groups of public-sector

employees. Wisconsin exempted public safety workers in its recent public-sector union

reform bill. Wisc. Educ. Ass’n Council v. Walker, 705 F.3d 640, 654-55 (7th Cir. 2013).

Other jurisdictions have distinguished between university faculty and other public

 7
employees bargaining over workload, Cent. State Univ. v. Am. Ass’n of Univ. Professors,

Cent. State Univ. Chapter, 526 U.S. 124, 125-27 (1999), TSA security screeners and other

TSA employees, Am. Fed’n of Gov’t Emps., AFL-CIO v. Loy, 281 F. Supp. 2d 59, 65-66

(D.D.C. 2003), aff’d, 367 F.3d 932 (D.C. Cir. 2004), and court security officers and other

police officers, Margiotta v. Kaye, 283 F. Supp. 2d 857, 864-65 (E.D.N.Y. 2003). These

laws have all survived rational basis review, as should the exemption for public safety labor

organizations in HB 1413.

 This Court’s role is not to determine whether the solution raised by the legislature

is perfectly suited to the problem it purports to solve; rather, as long as the reason for

distinguishing between public safety and non-public safety unions is plausible, there exists

a rational basis for treating these labor organizations differently under the law. Kan. City

Premier, 344 S.W.3d at 170. Here, the distinctions between the public employees the

separate labor groups wholly or primarily serve provides plausible explanations and

justifications for the dissimilar regulatory framework for public safety and nonpublic safety

labor groups and is not unconstitutional. 3 Therefore, the exemption for public safety

organizations does not violate equal protection as guaranteed by article I, section 2 and

3
 The principal opinion tacitly acknowledges the inherent distinctions between public
safety employees and non-public safety employees by suggesting the exemption may
satisfy equal protection review if it applied to public safety employees rather than public
safety unions. But under rational basis review, this Court’s role is not to judge the wisdom
of the General Assembly’s decision to differentiate labor groups verses the employees they
represent. Overbey, 361 S.W.3d at 378. Because public safety unions wholly or primarily
represent public safety employees, there exists “a plausible reason for the classifications in
question.” Id. (alteration omitted).
 8
does not support invalidating HB 1413 and enjoining the bill from becoming law as the

principal opinion concludes.

 For those reasons, I respectfully dissent.

 ___________________
 W. Brent Powell, Judge

 9